**Evelyn LITTLE, Petitioner,**

v.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE and Gary Johnson, Director, Respondents.**

No. 03–0498.

Supreme Court of Texas.

Argued on Sept. 8, 2004.

Decided Oct. 15, 2004.

Cynthia L. Biggers, Austin, Donald M. Bishop, Brentwood, Stephen Yelenosky, Austin, and John Griffin Jr., Houston Marek & Griffin, L.L.P., Victoria, for Petitioner.

Adrian L. Young, Greg Abbott, Attorney Gen., Robert Bruni Maddox, Jay T. Kimbrough, Phillip E. Marrus, Barry Ross McBee, John A. Neal, Chief Prosecutor, Edward D. Burbach and David A. Talbot Jr., Office of Attorney General, Austin, for Respondent.

Brian East, Advocacy, Inc., Austin, Amicus Curiae Coalition of Texas with Disabilities.

Justice SMITH delivered the unanimous opinion of the Court.

Section 21.051 of the Labor Code provides that "[a]n employer commits an unlawful employment practice if because of race, color, *disability,* religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual. . . ." TEX. LAB. CODE § 21.051 (emphasis added). For purposes of chapter 21 of the Labor Code, the term "disability" means "with respect to an individual, a mental or *physical impairment that substantially limits at least one major life activity* of that individual, a record of such an impairment, or being regarded as having such an impairment. . . ." *Id.* § 21.002(6) (emphasis added).

The question in this case is whether the plaintiff-petitioner, whose left leg has been amputated at the knee, produced legally sufficient evidence that, at the time of the adverse employment actions of which she complains, she had a "disability." More specifically, the question is whether there is any probative summary judgment evidence that Evelyn Little, who wears a prosthesis on her left leg and walks with a noticeable limp, had at that time a "physical impairment that substantially limit[ed] at least one major life activity."

The trial court granted the defendants' motion for summary judgment. The court of appeals affirmed, concluding that Little had "failed to make a threshold showing that she has a disability." 147 S.W.3d 421, 425. We will reverse and remand to the court of appeals.

## I

In 1983, the Legislature enacted the Commission on Human Rights Act (CHRA). *See* CHRA, 68th Leg., 1st C.S., ch. 7, 1983 Tex. Gen. Laws 37 (compiled as Tex.Rev.Civ. Stat. Ann. art. 5221k). The CHRA created the Commission on Human Rights and designated it the state agency responsible for administering the statute. *Id.* §§ 3.01(a), 3.02.

Under the CHRA, as enacted, employers and other covered entities were generally prohibited from discriminating against an individual "because of race, color, handicap, religion, sex, national origin, or age" with respect to hiring and other employment actions. *Id.* §§ 5.01–5.03. The CHRA, as enacted, provided:

> "Handicap" means a condition either mental or physical that includes mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, but does not include a condition of addiction to any drug or illegal or federally controlled substances or a condition of addiction to the use of alcohol.

*Id.* § 2.01(7)(B).

In 1987, in *Chevron Corp. v. Redmon*, 745 S.W.2d 314 (Tex.1987), this Court construed the term "handicap." Redmon, after being denied employment as a maintenance helper, sought relief under the CHRA. The vision in one of her eyes could not be corrected to better than 20/60, and it was undisputed that she was not hired because of her vision. *Id.* at 315. The Court determined as a matter of law that she was not "handicapped," concluding that "Redmon's minor visual problems do not constitute those severe barriers to employment or other life functions which necessitate protection by the State." *Id.* at 318. With regard to legislative intent, the Court stated: "[T]he legislature obviously chose not to employ the definition of 'handicap' in the federal Rehabilitation Act, 29 U.S.C. § 701–796i." *Id.*

In 1988, the Sunset Advisory Commission issued a report that, inter alia, recommended that "[t]he definition of handicap in the Texas Commission on Human Rights Act should be changed to continue the broad interpretation under which the commission ha[d] operated" before *Chevron Corp. v. Redmon* and that "[t]he definition should be generally patterned after the language used by the federal government in the Federal Rehabilitation Act of 1973." Tex. Sunset Advisory Comm'n, Tex. Comm'n on Human Rights: Staff Report 49 (1988) (available at Legislative Reference Library).

In 1989, the Legislature enacted sunset review legislation for the Commission on Human Rights. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 1186, 1989 Tex. Gen. Laws 4824. The enactment replaced the term "handicap" with "disability" throughout the CHRA and provided: " 'Disability' means a mental or physical impairment that substantially limits at least one major life activity or a record of such a mental or physical impairment...." *Id.* § 3, sec. 2.01(4), at 4824. *Cf. Holt v. Lone Star Gas Co.*, 921 S.W.2d 301, 305 (Tex.App.-Fort Worth 1996, no writ) ("[T]he 1989 changes in the TCHRA have lowered the threshold at which we will find discrimination from a person who is handicapped to a person who merely suffers from a disability....").

According to the available legislative history, the Legislature purposely adopted the federal statutory language. *See, e.g.,* Senate Gov't Org. Comm., Bill Analysis (May 10, 1989), Tex. S.B. 479, 71st Leg., R.S. (1989) (available at Legislative Reference Library) ("The purpose of this bill is to make the statutory modifications recommended by the Sunset Advisory Commission and other changes regarding TCHR. Generally, modifications proposed by this bill: ... define 'disability' to reflect part of the definition of 'individual with handicaps' in the Federal Rehabilitation Act of 1973....").

In 1990, Congress enacted the Americans with Disabilities Act (ADA). Pub.L. No. 101–336, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101–12213). Under Title I of the ADA, employers and other covered entities are generally prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual" in regard to hiring and other employment actions. 42 U.S.C. § 12112(a). Section 12102(2) of the ADA provides: "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("[T]o fall within this definition one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C)).").

In 1993, the Legislature amended "the Commission on Human Rights Act to bring it into compliance with the Civil Rights Act of 1991 and the Americans with Disabilities Act." Senate Research Ctr., Bill Analysis (Aug. 4, 1993), Tex. H.B. 860, 73rd Leg., R.S. (1993) (available at Legislative Reference Library). The enactment modified the definition of "disability" contained in the CHRA to conform it with the ADA definition. *See* Act of May 14, 1993, 73rd Leg., R.S., ch. 276, § 2, sec. 2.01(4), 1993 Tex. Gen. Laws 1285, 1285.

Also in 1993, as part of the state's continuing statutory revision program, part of the CHRA was codified in the Labor Code. *See* Labor Code, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 991–1004. The remainder of the CHRA was transferred to the Government Code. *Id.* § 2, at 1258–61. According to the relevant revisor's note:

> The revised law omits as unnecessary the short title provision of the source law formerly found in V.A.C.S. Article 5221k, Section 1.01. The source law formerly known as the Commission on Human Rights Act is now codified in part as Chapter 461, Government Code, and in part as Chapter 21, Labor Code. The omitted source law reads: "Art. 5221k. Sec. 1.01. This Act may be cited as the Commission on Human Rights Act."

2 Tex. Legislative Council, Labor Code, Revisor's Report 1216 (1993) (available at Legislative Reference Library). In addition, the Commission on Human Rights was recently abolished and its powers and duties were transferred to the newly-created Civil Rights Division of the Texas Workforce Commission. *See* Act of May 30, 2003, 78th Leg., R.S., ch. 302, 2003 Tex. Gen. Laws 1279.[1] Accordingly, we will not

---

1. The enactment became effective on March 1, 2004. *See* Notice Regarding the Transfer of Tex. Comm'n on Human Rights to the Tex. Workforce Comm'n Civil Rights Div., 29 Tex. Reg. 2977 (Mar. 19, 2004).

refer to chapter 21 of the Labor Code as the Commission on Human Rights Act.

## II

In her first amended original petition, Evelyn Little sought relief under chapter 21 of the Labor Code against the Texas Department of Criminal Justice and Gary Johnson, in his official capacity as executive director of the Texas Department of Criminal Justice.[2] In part five of the pleading, entitled "Facts," Little alleged:

Plaintiff, Evelyn Little, has a visible disability, which is the loss of the left leg at the knee. She wears a full leg prosthesis and has a limp.

Ms. Little has been unlawfully denied employment by Defendants as a result of her disability.

Ms. Little is an experienced Food Service Manager, having served as food manager at nationally recognized restaurants (Air Host, Sky Host, Ramada Inn and Howard Johnson's Inns). She has supervisory experience. She can handle physically demanding work and has worked 8 to 16 hour shifts without a break. She is mature (48 and 49 years old at the time she was applying for the jobs as Food Manager at Defendant TDCJ's various locations).

Ms. Little completed the application and interview process for Food Service Manager positions at TDCJ over 20 times from 1995 through April 1999 at TDCJ's locations in east Texas. Each time she was notified that she was qualified for employment but was denied employment. Ms. Little was demonstrably better qualified than the selected applicant in several instances and was denied employment because of her disability.

In its answer, the TDCJ asserted a general denial. In addition, in part two of the

pleading, entitled "Specific Denials and Defenses," the TDCJ alleged:

2. Plaintiff is not disabled within the meaning of the TCHRA or other law.

3. Plaintiff has requested no accommodation nor is an accommodation required to enable her to perform the essential functions of the job of Food Service Manager of TDCJ. Therefore, there is no issue whether any reasonable accommodation would or could have been provided. While Plaintiff does walk with a slight limp, her condition has been substantially corrected by prosthesis.

. . . .

7. For each of the selections of which Plaintiff complains, TDCJ had a legitimate, non-discriminatory reason for its selection.

After discovery was completed, the TDCJ moved for summary judgment under Texas Rule of Civil Procedure 166a(c). In the argument section of the motion, the TDCJ asserted:

Plaintiff must first prove that she is disabled. She is not disabled because she is not unable to perform either a broad range of jobs, or even the particular job. *See* 42 U.S.C. § 12112(a). She needs no accommodation. She is not substantially limited in any major activity. Her condition and abilities must be considered, as corrected by her prosthesis. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482–3, 119 S.Ct. 2139, 2146–7, 144 L.Ed.2d 450 (1999).

In the motion's conclusion, the TDCJ argued:

Plaintiff is able to walk with only a slight limp and is fully able to work. There is no evidence that she is disabled or that TDCJ perceived her as disabled.

---

**2.** For convenience, the defendants will be referred to as the "TDCJ" in the remainder of the opinion.

Neither party claims she needs an accommodation to perform the job as food service manager, or even a broad range of jobs. Her condition has been substantially corrected by prosthesis. She does not meet the definition of disability under the TCHRA.

Moreover, Plaintiff cannot show that she was the best qualified candidate for any of the positions applied for. TDCJ records show that the best qualified candidates were selected. Plaintiff cannot prove pretext in any of the selection decisions. Moreover, she has no evidence of intentional discrimination. Her discrimination claim fails as a matter of law.

In support of the summary judgment motion, the TDCJ attached, inter alia, part of Little's deposition testimony. The deposition was conducted on September 7, 2001. In response to questions from counsel for the TDCJ concerning her physical impairment, Little agreed that she "walk[s] well with a limp" and "get[s] around pretty well." [3] The TDCJ presented no other summary judgment evidence regarding Little's physical impairment.

In her response to the summary judgment motion, Little asserted:

[I]n the very case that established the relevance of corrective measures to the determination of disability, the United States Supreme Court noted that "individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). To defeat summary judgment, therefore, Ms. Little need offer only more than a scintilla of evidence that she is substantially impaired in walking or running. Her affidavit alone accomplishes that.

Alternately, Ms. Little has a record of a substantial impairment of a major life activity. . . .

Alternately, Ms. Little contends and is entitled to attempt to prove to a jury that TDCJ personnel who made the hiring decisions at issue regarded her as a person with a substantial impairment of a major life activity. . . .

In the response's conclusion, Little argued:

Ms. Little has met her burden of producing sufficient evidence of the only

---

3. The exchange, in its entirety, is set forth below:

Q. Is your leg amputated below the knee?
A. I have a half a kneecap so that would be above the knee—below the knee. It's an AK.
Q. For lack of a better term, the lower half of your leg has been taken off, is that correct?
A. Yes.
Q. Basically the lower half. You still have your thigh and your upper leg?
A. Yes.
Q. But you don't have your shin and all of that?
A. No. I don't have no toes down there.
Q. You have a prosthetic device?
A. Yes.

Q. I noticed when you came in today that it appeared to me you were able to walk pretty well, but with a limp?
A. Yes.
Q. But you are able to walk, are you not?
A. Yes, with the prosthesis.
Q. Given the fact that you have a limp, I mean you walk—it appeared to me that—you walk pretty well given the fact that you do walk with a limp. You walk well with a limp, would that be a fair statement?
A. Yes, that's correct.
Q. If there is such a thing as walking well with a limp, you walk well with a limp?
A. Yes, I look good.
Q. Yes, that's what I was trying to say. You don't—you're limited because you do walk with a limp, but it would be fair to say that you get around pretty well, don't you?
A. Yes, I do.

element of her prima facie case that has been questioned by defendants and her burden of bringing forth sufficient evidence of pretext that would enable reasonable and fair-minded people to differ in their conclusions. She is entitled to have her case decided by a jury.

In opposition to the summary judgment motion, Little executed and proffered a five-page affidavit. The affidavit was executed on May 17, 2002. In the affidavit, Little declared that "[w]hen I walk, my left leg remains stiff, and, with each step, I must swing it out away from my body to clear the floor."[4] In addition to the affidavit, Little attached to her response the deposition testimony of Ronald Kelly and other individuals who had conducted the relevant employment interviews. In response to questions concerning Little's limp, Kelly stated that "[i]t's something you can't miss unless you're just totally blind."

On June 6, 2002, the trial court granted the TDCJ's motion for summary judgment. The order granting the motion did not state the specific ground or grounds on which the motion was granted.

In the court of appeals, the parties presented the same arguments and authorities that they had presented to the trial court. On March 27, 2003, the court of appeals affirmed the trial court's judgment. With regard to whether Little had an actual disability, the court of appeals stated:

> [A]ppellant contends that her physical impairment is her amputated leg. As evidence of her disability, appellant directs us to her affidavit, wherein she states that she "cannot sit or walk like

other people," and she cannot "walk quickly" and "cannot run at all." Appellant contends that even though she is able to walk with a prosthesis, she is still disabled because of substantial limitations on her ability to walk or run.

. . . .

Here, the summary judgment evidence shows that appellant can walk well with the use of her prosthesis, although with a slight limp and at a slower pace. We consider corrective and mitigating measures, such as the use of a prosthesis, when determining whether appellant is "disabled," as the term is defined under the ADA and TCHRA. *See Sutton v. United Air Lines,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 2146–47, 144 L.Ed.2d 450 (1999) (finding that evaluating person in hypothetical uncorrected state was impermissible interpretation of ADA). While there is some evidence of appellant's impairment, there was no summary judgment evidence that such impairment constituted a substantial limitation of a major life activity.

147 S.W.3d at 424. The court of appeals also concluded that "there is no summary judgment evidence that appellant has a substantial record of impairment" and that "appellant did not present any competent summary judgment evidence that showed TDJC [sic] personnel regarded her as having an impairment." *Id.* at 425.

In this Court, it is undisputed that Little has a "physical impairment" and that walking is a "major life activity." TEX. LAB. CODE § 21.002(6). As framed by Little, "[t]he first issue in this case is whether the prosthesis has restored function so that

---

**4.** In relevant part, the affidavit provided:
  My prosthesis is an artificial leg that attaches above the knee. I wear it every day of my life. I am not able to bend my left leg with my leg muscles. To sit, I have to bend my artificial leg with my hand. When

I walk, my left leg remains stiff, and, with each step, I must swing it out away from my body to clear the floor. I cannot sit or walk like other people do or walk quickly. I cannot run at all.

# 381

the impairment is no longer a substantial limitation of the major life activity of walking."

After the parties filed briefs on the merits, the Court received a joint *amici curiae* brief from Advocacy, Incorporated; the Coalition of Texans with Disabilities; the American Association of Retired Persons; the American Diabetes Association; and the National Association of Protection and Advocacy Systems. With regard to Little's prosthesis, the *amici* assert: "Perhaps someday, medical regeneration or a super-prosthesis will exist (and will be accessible to Ms. Little) that completely restores functioning in all respects. That, of course, is not the situation in this case...." Accordingly, the *amici* contend that, at the time of the adverse employment actions of which she complains, Little clearly had a "physical impairment that substantially limit[ed] at least one major life activity." TEX. LAB.CODE § 21.002(6).

## III

■ Under Texas Rule of Civil Procedure 166a(c), the judgment sought by the moving party must be rendered if the summary judgment evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law...." TEX.R. CIV. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of the plaintiff's cause of action is entitled to summary judgment. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *see also Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991) ("For a defendant to be entitled to summary judgment [under Rule 166a(c) ] it must *disprove*, as a matter of law, one of the essential elements of each of plaintiffs' causes of action.").

"When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant," and resolves all doubts in favor of the nonmovant. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)).

■ We review de novo a court of appeals's affirmance of a summary judgment rendered under Texas Rule of Civil Procedure 166a(c). *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003).

## IV

Section 21.002(6) of the Labor Code provides:

"Disability" means, with respect to an individual, a mental or *physical impairment that substantially limits at least one major life activity* of that individual, a record of such an impairment, or being regarded as having such an impairment. The term does not include:

(A) a current condition of addiction to the use of alcohol, a drug, an illegal substance, or a federally controlled substance; or

(B) a currently communicable disease or infection as defined in Section 81.003, Health and Safety Code, or required to be reported under Section 81.041, Health and Safety Code, that constitutes a direct threat to the health or safety of other persons or that makes the affected person unable to perform the duties of the person's employment.

TEX. LAB.CODE § 21.002(6) (emphasis added).

■ One express purpose of chapter 21 of the Labor Code is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 *and its subsequent amendments* (42 U.S.C. Section 12101 et seq.)." TEX. LAB.

CODE § 21.001(3) (emphasis added). Moreover, as discussed in part I, the Legislature in 1993 fully incorporated the ADA definition of the term "disability" into chapter 21. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999) ("The [Commission on Human Rights] Act purports to correlate 'state law with federal law in the area of discrimination in employment.' ") (quoting *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991)). Therefore, both the federal court decisions interpreting the ADA and the federal administrative regulations regarding the ADA guide our interpretation of the definition of "disability" contained in chapter 21. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001) ("[A]nalogous federal statutes and the cases interpreting them guide our reading of the TCHRA.").

In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the United States Supreme Court interpreted the definition of the term "disability" contained in the ADA and held that "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment, including, in this instance, eyeglasses and contact lenses." *Id.* at 475.[5]

In *Sutton*, the plaintiffs applied to the defendant for employment as pilots and were both rejected because of their vision. The plaintiffs' uncorrected vision was unquestionably poor; however, with glasses or contact lenses, they were able to function the same as individuals who were not visually impaired.[6] The Supreme Court concluded, inter alia, that the plaintiffs were not actually disabled within the meaning of the ADA and affirmed the dismissal of their lawsuit. *Id.* at 488–89, 494, 119 S.Ct. 2139.

In a passage directly relevant to this case, Justice O'Connor, writing for the majority, stated:

> The dissents suggest that viewing individuals in their corrected state will exclude from the definition of "disab[led]" those who use prosthetic limbs, see *post*, at 497–498 (opinion of STEVENS, J.), *post*, at 513 (opinion of BREYER, J.), or take medicine for epilepsy or high blood pressure, see *post*, at 507, 509 (opinion of STEVENS, J.). This suggestion is incorrect. The use of a corrective device does not, by itself, relieve one's disability. Rather, one has a disability under sub-

5. Not surprisingly, the decision generated a substantial amount of law review commentary. *See, e.g.,* White, *Deference and Disability Discrimination*, 99 MICH. L.REV. 532 (2000); Harrington, Comment, *The Americans with Disabilities Act: The New Definition of Disability Post–Sutton v. United Air Lines, Inc.*, 84 MARQ. L.REV. 251 (2000); McGarity, Note, *Disabling Corrections and Correctable Disabilities: Why Side Effects Might Be the Saving Grace of* Sutton, 109 YALE L.J. 1161 (2000); McDonnell, Note, *Sutton v. United Air Lines: Unfairly Narrowing the Scope of the Americans with Disabilities Act*, 39 BRANDEIS L.J. 471 (2000–2001); Lovett, Note, *Supreme Court's Clarification of the Effect of "Mitigating Measures" in Disability Determinations Muddies Disabilities Waters: Sutton v. United Airlines, Inc.*, 21 MISS. C.L.REV. 153 (2001).

6. "Petitioners are twin sisters, both of whom have severe myopia. Each petitioner's uncorrected visual acuity is 20/200 or worse in her right eye and 20/400 or worse in her left eye, but with the use of corrective lenses, each has vision that is 20/20 or better. Consequently, without corrective lenses, each effectively cannot see to conduct numerous activities such as driving a vehicle, watching television or shopping in public stores, but with corrective measures, such as glasses or contact lenses, both function identically to individuals without a similar impairment." *Sutton*, 527 U.S. at 475, 119 S.Ct. 2139 (record citations omitted).

section (A) if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity. For example, individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run.... The use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting.

*Id.* at 487–88, 119 S.Ct. 2139.

In addition, the federal Equal Employment Opportunity Commission has issued detailed regulations regarding Title I of the ADA and the definition of "disability" set forth in section 12102(2) of the ADA. *See* Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, 29 C.F.R. pt. 1630 (2004); *see also Waldrip v. Gen. Elec. Co.,* 325 F.3d 652, 655 n. 1 (5th Cir.2003) ("We cite the EEOC regulations as persuasive authority, not for *Chevron* deference. We early on stated, and often have repeated, that the regulations 'provide significant guidance.' Yet, we have never given the regulations *Chevron* deference, and recent decisions of the Supreme Court strongly suggest that the regulations are not entitled to such deference, because Congress delegated the authority to implement Title I of the ADA, which regulates employment, to the EEOC, 42 U.S.C. § 12116, but Title I does not include § 12102.") (citations omitted).

The relevant EEOC regulations provide: (i) *Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(j) *Substantially limits*—(1) The term *substantially limits* means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(i)-(j).

■ A person need not be totally unable to walk to be "disab[led]" under section 12102(2)(A) of the ADA; she need only be significantly restricted as to the condition, manner, or duration of her walking as compared to that of the average person in the general population. *See, e.g., Bragdon v. Abbott,* 524 U.S. 624, 641, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (The ADA "addresses substantial limitations on major life activities, not utter inabilities."); *Gillen v. Fallon Ambulance Serv., Inc.,* 283 F.3d 11, 22 (1st Cir.2002) ("The focus is not on whether the individual has the courage to participate in the major life activity despite her impairment, but, rather, on whether she faces significant obstacles when she does so. The EEOC's emphasis on 'condition, manner, or duration' in con-

trasting how a disabled person performs an activity and how a member of the general public performs that same activity dovetails with this formulation.").

■ In the light most favorable to Little, the summary judgment record reflects that, at the time of the adverse employment actions of which she complains, she was significantly restricted as to the manner in which she could walk compared to the manner in which the average person in the general population could walk. *Cf. Lowe v. Ala. Power Co.,* 244 F.3d 1305, 1307 (11th Cir.2001) ("A disability is defined as a physical or mental impairment that substantially limits a major life activity of an individual. 42 U.S.C. § 12102(2). Lowe is a double amputee below the knee and is disabled within the meaning of the statute."); *Belk v. Southwestern Bell Tel. Co.,* 194 F.3d 946, 950 (8th Cir.1999) (decided post-*Sutton* ) ("[I]t can hardly be disputed that Belk is disabled in the major life activity of walking. The full range of motion in his leg is limited by the brace, and his gait is hampered by a pronounced limp."). Therefore, we conclude that there is probative summary judgment evidence that, at the time of the adverse employment actions of which she complains, Little had a "physical impairment that substantially limit[ed] at least one major life activity." TEX. LAB.CODE § 21.002(6). Accordingly, the court of appeals erred in affirming the TDCJ's summary judgment on that ground.

**V**

■ In the trial court, the TDCJ moved for summary judgment on two grounds. The first ground was that Little did not meet the statutory definition of "disability." The second ground was that Little had no direct evidence of discriminatory intent, and that she could not raise an inference of discriminatory intent by prov-

ing that the TDCJ's articulated reasons for its adverse employment actions against her were a pretext for discrimination. Both grounds were raised and fully briefed in the court of appeals.

Under Texas Rule of Appellate Procedure 53.4, we have authority to consider the TDCJ's second ground for summary judgment. *See* TEX.R.APP. P. 53.4. However, we decline to do so. *Cf. Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996) ("We do not have the benefit of the court of appeals' decision on the merits of the insurance companies' alternate grounds or full briefing from the parties. For that reason, we remand the case to the court of appeals.").

**VI**

Based on the foregoing analysis, we reverse the court of appeals's judgment and remand the case to the court of appeals for further proceedings.