In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-340 CV


____________________



DANA LEBLANC, Appellant



V.



LAMAR STATE COLLEGE AND BARBARA PEVETO, INDIVIDUALLY AND 


AS REPRESENTATIVE OF LAMAR STATE COLLEGE, Appellees






On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B031115-C






 OPINION 


 In this appeal, we consider whether the defendants established as a matter of law that
they were entitled to summary judgment on the plaintiff's disability-based causes of action. 
Because we find the trial court properly granted summary judgment to the defendants, we
affirm. 

 Dana LeBlanc sued Lamar State College-Orange and Barbara Peveto, her supervisor,
for unlawful employment practices. LeBlanc claimed that Lamar and Peveto discriminated
against her because of her disability and subjected her to a hostile work environment. 

 LeBlanc raises three issues on appeal. In the first, she asserts the trial court erred in
denying her motion for partial summary judgment. In issues two and three, she contends the
trial court erred in granting the defendants' motion for summary judgment. 

I. Background
 

 LeBlanc has a hereditary, neurological disorder called Friedreich's ataxia. It is a
progressive disease that affects balance and coordination. At the time of LeBlanc's
deposition, she was confined to a wheelchair. 

 LeBlanc began working at Lamar's Learning Resource Center ("Center") in the fall
of 1999. The Center provides computer access and tutoring to students in math, English,
reading, and various computer software applications. Her immediate supervisor was Peveto,
the Center's Coordinator. Lamar also hired Barbara Sarver in a similar position. Both
LeBlanc and Sarver were hired on a part-time basis (eighteen hours per week) to assist with
tutoring. Funding for their jobs came from a pooled position in Lamar's Business and
Technology division. Although they were designated as "adjunct classroom assistants," there
were no job descriptions for their positions, which lasted for one semester and were not
posted or otherwise filled in accordance with Lamar's requirements for hiring personnel for
regular positions. Further, LeBlanc and Sarver (and any individuals in other adjunct
positions) were not guaranteed employment beyond the semester for which they were hired. 
After LeBlanc's and Sarver's initial appointments for the 1999 fall semester expired, 
LeBlanc and Sarver were reappointed for the part-time positions on a semester-by-semester
basis. 

 During budget preparations for fiscal year 2003, Peveto requested that the two part-
time positions held by LeBlanc and Sarver be replaced by one full-time and one part-time
position, with both of these new positions to be paid from the Center's funds. Lamar's
budget committee subsequently approved only the full-time position, which Lamar classified
as a "laboratory technician."

 In July 2002, Lamar posted the new full-time position on campus and through the
Texas Workforce Commission. Only LeBlanc and Sarver applied. As job candidates, 
LeBlanc and Sarver took a test that was designed to measure their skills pertinent to the
position's responsibilities, and a five-member search committee interviewed them. The
committee used the same set of interview questions for both women and assigned each a
score based on her application, letter of application, and interview responses. LeBlanc
earned 457.5 points in this part of the process, while Sarver earned 665. 

 Both LeBlanc and Sarver took the same test, which was designed to demonstrate the
applicant's skills in English, math, and computer science. The test had five parts, with each
part worth ten points. The five parts were (1) English skills (correcting a paragraph), (2)
math skills (five problems worth two points each), (3) English and computer skills (preparing
a memorandum), (4) knowledge of Microsoft Excel, and (5) knowledge of Microsoft Access. 
LeBlanc scored 37 on this test, while Sarver scored 47. Based on the total scores from the
applications, interviews, and test results, the search committee unanimously recommended
Sarver for the job. 

 LeBlanc, who has an associate's degree, subsequently applied for the Center's
laboratory manager's position, which required a bachelor's degree. Nineteen individuals
applied for the job, but Lamar only interviewed candidates who met the position's minimum
qualifications. Lamar hired an individual from outside the College for the laboratory manager
position. 

 LeBlanc sued Lamar and Peveto and claimed that she should have been offered either
the lab tech or the lab manager position. The defendants filed a traditional motion for
summary judgment on all of LeBlanc's claims and LeBlanc filed a partial motion for
summary judgment on her claim of disability-based employment discrimination. See Tex. R.
Civ. P. 166a(c). The trial court granted the defendants' motion for summary judgment and
denied LeBlanc's motion for partial summary judgment. 

II. Standard of Review


 "When both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review the summary judgment evidence
presented by both sides and determine all questions presented and render the judgment the
trial court should have rendered. The reviewing court must affirm summary judgment if any
of the summary judgment grounds are meritorious." Texas Workers' Comp. Comm'n v.
Patient Advocates of Texas, 136 S.W.3d 643, 648 (Tex. 2004) (citations omitted). To prevail
on a summary judgment motion brought under Rule 166a(c), a movant must show that there
is no genuine issue as to any material fact and that it is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Little v. Texas Dep't of Criminal Justice, 148 S.W.3d 374,
381(Tex. 2004). A defendant "who conclusively negates at least one essential element of a
cause of action is entitled to summary judgment on that claim." IHS Cedars Treatment Ctr.
of Desoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (citing Southwestern Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)). A plaintiff moving for summary
judgment must conclusively prove all essential elements of its claim. See Tex. R. Civ. P.
166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986); Roberts v. Clark, 188
S.W.3d 204, 209 (Tex. App.-Tyler 2002, pet. denied). "When reviewing a summary
judgment, we take as true all competent evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant's favor."
Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005). If the movant
establishes a right to summary judgment, the burden shifts to the nonmovant to raise a
material fact issue sufficient to defeat summary judgment. See Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

III. Applicable Statute


 LeBlanc sued the defendants under Chapter 21 of the Texas Labor Code (entitled
"Employment Discrimination"). See Tex. Lab. Code Ann. §§ 21.001-21.556 (Vernon
2006). Section 21.051 of the Labor Code creates a cause of action against an employer that
discriminates against a person "because of" a disability. Id. § 21.051. (1)
 

 One of Chapter 21's purposes is providing "for the execution of the policies" of the
federal Americans with Disabilities Act of 1990 ("ADA"). Tex. Lab. Code Ann. §
21.001(3) (Vernon 2006); see Little, 148 S.W.3d at 381-82; see also 42 U.S.C.A. §§ 12101-12213 (2005). Thus, when reviewing a trial court's decisions in disability-based employment
discrimination cases, we may consider federal cases as precedent. See Quantum Chem. Corp.
v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001); see also Little, 148 S.W.3d at 382 (noting that
federal decisions guide Texas courts in interpreting chapter 21's definition of disability).

IV. Disability-Based Employment Discrimination

 We first consider whether the trial court erred in granting summary judgment to the
defendants on LeBlanc's employment-discrimination claim. To prevail on a disability
discrimination claim, a plaintiff must show that (1) she has a "disability," (2) she is
"qualified" for the job she seeks, and (3) she suffered an adverse employment decision 
because of her disability. Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1092 (5th Cir.
1996); Davis v. City of Grapevine, 188 S.W.3d 748, 757 (Tex. App.-Fort Worth, 2006, pet.
denied). Employers are liable only for discrimination that occurs "because of or on the basis
of a physical or mental condition that does not impair an individual's ability to reasonably
perform a job." Tex. Lab. Code Ann. § 21.105 (Vernon 2006) (emphasis added); see Austin
State Hosp. v. Kitchen, 903 S.W.2d 83, 88 (Tex. App.-Austin 1995, no writ). Further,
section 21.128 declares: It is an unlawful employment practice for a respondent covered under this
chapter to fail or refuse to make a reasonable workplace accommodation to a
known physical or mental limitation of an otherwise qualified individual with
a disability who is an employee or applicant for employment, unless the
respondent demonstrates that the accommodation would impose an undue
hardship on the operation of the business of the respondent.


Tex. Lab. Code Ann. § 21.128(a) (Vernon 2006) (emphasis added).

 In moving for summary judgment on LeBlanc's employment-discrimination claim,
the defendants asserted that LeBlanc was not a "qualified individual" as a matter of law. A
qualified, disabled person is one "'with a disability who, with or without reasonable
accommodations can perform the essential functions of the employment position that such
individual holds or desires.'" Turco, 101 F.3d at 1092 (quoting 42 U.S.C. § 12111(8)).
However, an employer's duty to make a "reasonable workplace accommodation" does not
arise unless the disabled employee or applicant is an "otherwise qualified individual." Tex.
Lab. Code Ann. § 21.128(a). (2) "[A]n otherwise qualified person is 'one who is able to meet
all of the program's requirements in spite of [her] handicap.'" Burch v. City of Nacogdoches,
174 F.3d 615, 619 (5th Cir. 1999) (quoting Turco, 101 F.3d at 1093). 

 If the defendants' evidence established that LeBlanc was not qualified for the
positions of lab technician or lab manager, to avoid summary judgment, LeBlanc would have
to show that (1) she could perform the job's essential functions despite her disability, or (2)
she could perform the job's essential functions if she received a reasonable accommodation
for her disability. See Davis, 188 S.W.3d at 763; see also Cornyn v. Speiser, Krause,
Madole, Mendelsohn & Jackson, 966 S.W.2d 645, 648-49 (Tex. App.-San Antonio 1998,
pet. denied). Essential functions of a job are those that "bear more than a marginal
relationship to the job at issue." Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir.
1993). (3) Further, the plaintiff has the burden to request reasonable accommodations; she
cannot expect the defendant to have "extra-sensory perception" about accommodations that
would allow her to perform the job's essential functions. See Burch v. City of Nacogdoches,
174 F.3d at 621; Burch v. Coca-Cola, Co., 119 F.3d 305, 319 (5th Cir. 1997). 

 A. Laboratory Technician


 The defendants' summary judgment evidence established that the laboratory
technician's responsibilities included tutoring developmental students (those requiring 
remedial classes in math and English) as well as computer-science students. (4)
 In fact, the
evidence showed that the Center consistently served more math and English students than
computer students. (5)
 Thus, the ability to tutor math and English students was an essential job
function and more than marginally related to the job. See Chandler, 2 F.3d at 1393. 

 LeBlanc's deposition testimony was part of the summary judgment evidence. She
acknowledged that she was not qualified to tutor in math and English, that she did not tutor
in English, and that other personnel tutored the majority of math students. She further agreed
that math was not a strong subject for her. The record reflects that Peveto tutored the math
and English students when both she and LeBlanc were present in the Center. LeBlanc
conceded that if the lab tech's job were to be a one-person job, that person would need to
be able to tutor in everything, which she admittedly could not do. 

 Additional summary judgment evidence included LeBlanc's test scores and interview-application results. Leblanc's overall test score was significantly lower than Sarver's. For
the test's math portion, LeBlanc scored two points out of a possible ten, while Sarver scored
ten points. For the interview-application scoring, the committee considered the candidates's
applications, letters of application, and interview responses. LeBlanc's scores on this part
of the interview-application were likewise significantly lower than Sarver's. 

 In addition, the defendants offered the affidavit of Barbara Peveto. As LeBlanc's
supervisor at the Center, Peveto observed LeBlanc's work for several years. Peveto stated
that LeBlanc assisted the computer-science students but left the tutoring of the math and
English students to others. When LeBlanc was the only employee on duty, the math and
English students did not receive assistance. According to Peveto, if LeBlanc had been
selected for the full-time position, there would have been no one to cover her inability to
tutor in these two areas. Sarver, according to Peveto, could tutor students in all required
subject areas. 

 We conclude that the defendants' summary judgment evidence showed that LeBlanc
was not qualified to perform essential functions of the lab tech position. Because the
defendants' evidence negated the qualification element of LeBlanc's cause of action, she had
the burden to show she could perform the job despite her disability or to show that she could
perform the job if given a reasonable accommodation that she requested. See Burch, 174
F.3d at 621; Siegler, 899 S.W.2d at 197; Davis, 188 S.W.3d at 763. 

 Therefore, we turn to LeBlanc's summary judgment evidence and her argument that
she was qualified for the job. LeBlanc identifies certain evidence to show her qualifications
for the lab tech position. She argues that her job-performance evaluations and a social
security evaluation indicate she was performing the essential job functions of her job
satisfactorily, with or without accommodation. However, these evaluations relate to her
temporary job, one that had not been posted and did not have specific designated
responsibilities. LeBlanc admittedly did not tutor math and English while in her temporary
position. Thus, we conclude that these evaluations do not raise a genuine issue of material
fact regarding whether LeBlanc could perform the responsibilities of the lab tech position,
which required math and English tutoring.

 LeBlanc also maintains that her affidavit controverted the defendants' assertion that
she was not qualified. LeBlanc's post-deposition affidavit asserted that she is "well qualified
to perform the essential job duties and tasks of the Technician I position for which [she] had
been working [and] which was created from [her] part time position." This is the only
statement in her affidavit in which she addresses her qualifications.

 LeBlanc's assertions, however, are conclusory. First, without any factual basis,
LeBlanc implies that the essential job duties of her former job are the same as the lab tech
position for which she applied. Second, she also concludes, without any factual basis, that
she is "well qualified" for the new position. Such conclusory statements are insufficient to
defeat summary judgment. 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg.
Capital, 192 S.W.3d 20, 27 (Tex. App.-Houston [14th Dist.] 2005, pet. denied) (citing
Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997)); see Tex. R. Civ. P. 166a(f). 
Statements are conclusory if they fail to provide underlying facts to support their conclusions. 
1001 McKinney, 192 S.W.3d at 27 (citing Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex.
App.-Houston [1st Dist.] 1997, no writ)). 

 Further, LeBlanc does not present any evidence that prior to Lamar's hiring decision 
she requested a reasonable accommodation that would have assisted her in performing the
essential job functions of the lab tech position. She had the burden to make such a request.
See Burch v. City of Nacogdoches, 174 F.3d at 621; see also Burch v. Coca-Cola Co., 119
F.3d at 319. The concept of "reasonable accommodation" embodies the notion that, with
the accommodation, the employee will be qualified to perform the job's essential functions. 
See Turco, 101 F.3d at 1093-94 (finding that plaintiff could avoid summary judgment by
showing that a reasonable accommodation of disability would have enabled him to perform
essential job functions). 

 Based on the summary judgment evidence, the only accommodation LeBlanc
requested was one dated April 30, 2001. That request was for assistance in the restroom and
assistance in getting to and from her vehicle. (6) The record reflects that at the time Lamar
made its hiring decision in the summer of 2002, LeBlanc had made no suggestions regarding
how the school could accommodate her deficiencies in math and English. 

 In summary, neither LeBlanc's affidavit nor her evaluations raise a fact issue to
demonstrate that she was qualified for the new lab tech position. Further, there is no evidence
that she requested reasonable accommodations regarding her inability to perform the job's
essential functions. Thus, we conclude that LeBlanc failed to raise a fact issue to defeat the
summary judgment on her disability-discrimination claim as it relates to the lab tech position. 
See Siegler, 899 S.W.2d at 197.

B. Laboratory Manager


 The defendants further presented summary judgment evidence supporting their
contention that LeBlanc was not a qualified person for the laboratory manager's position.
The defendants showed that the laboratory manager's duties included supervising the lab
tech, whose duties included tutoring in math and English, as described above. Lamar's
posted notice for the laboratory manager's position required applicants to have a bachelor's
degree. LeBlanc admittedly did not have a bachelor's degree. The defendants' summary
judgment evidence reflects that Lamar interviewed only applicants who had the position's
required degree. Further, LeBlanc conceded she was not aware of Lamar's interviewing any
applicant who did not meet the degree requirement. Thus, we conclude that the defendants'
summary judgment evidence negated the "qualified individual" element of LeBlanc's cause
of action relating to the laboratory manager's position. See Mason, 143 S.W.3d at 798. 

 Though LeBlanc had the burden to provide evidence establishing a fact issue on
whether she was qualified for the lab manager's position, she offered no additional evidence
beyond that submitted in support of her claim that she was qualified for the lab tech position. 
Thus, we find that the defendants established that LeBlanc was not qualified for the lab
manager's position and that she failed to raise a fact issue on whether she was qualified for
the position. See Siegler, 899 S.W.2d at 197. 

 Accordingly, we find that the trial court properly granted summary judgment to the
defendants on LeBlanc's first cause of action, disability-based employment discrimination. 
Once the defendants demonstrated that the employment decision was not disability-based,
LeBlanc had the burden to raise a material issue of fact that she was qualified for one of the
two jobs available. See id. Her summary judgment evidence fails to raise a genuine issue
of material fact.

V. Disability-Based Harassment


 We next consider whether the trial court erred in granting summary judgment to the
defendants on LeBlanc's second cause of action, disability-based harassment. (7) In her second
amended petition, LeBlanc alleged that she suffered harassment from Lamar and Peveto in
the following ways: (1) Peveto placed obstacles in front of LeBlanc's wheelchair, (2)
Peveto placed documents in drawers above LeBlanc's reach, (3) Lamar refused to offer
LeBlanc the full-time position, and (4) Peveto devised a test weighted against LeBlanc's
strengths. 

 The United States Fifth Circuit first recognized disability-based harassment claims as
cognizable under the ADA in 2001. See Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d
229, 232, 234-5 (5th Cir. 2001) (finding that the ADA "embraces claims of disability-based
harassment," relying in part on Title VII, and noting similarities in language and purposes
of Title VII and the ADA). Neither party cites a Texas case considering the viability of a
disability-based harassment claim under Texas law, nor have we found any. Its recognition,
however, by the Fifth Circuit and the express language of the Texas statute serve as authority
for our doing so. See Tex. Lab. Code Ann. § 21.001(3); Toennies, 47 S.W.3d at 476; see also
Little, 148 S.W.3d at 382.

 As an initial matter, a plaintiff must show that the complained-of conduct is an
actionable offense. See Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 509 (5th Cir.
2003). "For workplace abuse to rise to the level of an actionable offense the 'disability-based
harassment must be sufficiently pervasive or severe to alter the conditions of employment
and create an abusive working environment.'" Id. (quoting Flowers, 247 F.3d at 236).

 Further, a plaintiff in a disability-based discrimination case must show that (1) she
has "protected group" status; (2) she suffered unwelcome, disability-based harassment that
affected a term, condition, or privilege of employment; and (3) her employer knew or should
have known about the harassment, but did not take prompt, remedial action. See Flowers,
247 F.3d at 235-36. The defendants contend that the "meager facts" LeBlanc described do
not state a disability-harassment claim. We agree.

 The defendants supported their contention with summary judgment evidence
developed primarily from LeBlanc's deposition testimony. In regard to the obstacles that
Peveto allegedly placed in the path of LeBlanc's wheelchair, LeBlanc testified that she could
recall one time that a chair was in her way. In a follow-up question, defense counsel asked
LeBlanc: "Well, I want to be sure that we have exhausted the subject of Ms. Peveto putting
furniture in the path of where your wheelchair needed to go. Do you have anything else to
tell me about that?" LeBlanc responded, "No." LeBlanc further testified as follows:

 [Defense Counsel]: Did you ever ask Ms. Peveto to move something out of
your way and she didn't immediately do it?


 [LeBlanc]: I don't recall.


 [Defense Counsel]: Was there ever an instance where you were moving
along in your wheelchair and your path was blocked and
Ms. Peveto was there and you called for help and she did
not help you?


 [LeBlanc]: I don't recall. 

 LeBlanc's testimony about her other claims similarly failed to show action pervasive
or severe enough to create an abusive environment. In regard to Peveto's allegedly placing
documents out of LeBlanc's reach, LeBlanc testified that this occurred four or five times
during a two-year period. 

 To negate LeBlanc's "weighted test" claim, the defendants presented evidence that
forty percent of the test involved only computer skills, LeBlanc's area of strength. Twenty
percent involved a combination of computer and English skills, and the remaining forty
percent tested math and English skills (twenty percent for each). In addition, as for Lamar's
hiring others instead of LeBlanc, we have already found that LeBlanc failed to create an issue
of material fact regarding her employment-discrimination claim. Thus, we fail to see how
the design of a test for another job position or how Lamar's hiring decision on another
position are relevant to LeBlanc's claims of disability-based harassment occurring when she
was a classroom assistant. 

 The defendants' summary judgment evidence proved that the complained-of actions 
were not sufficiently pervasive to support a disability-based harassment claim. See Gowesky,
321 F.3d at 509; Flowers, 247 F.3d at 236. Thus, the burden shifted to LeBlanc to controvert
the defendants' showing. See Siegler, 899 S.W.2d at 197.

 In her response to Lamar's motion for summary judgment, LeBlanc cited no authority
supporting her contention that the alleged actions constituted disability-based harassment. 
Likewise, on appeal, she cites no authority supporting her contentions and in her brief she
fails to distinguish Flowers and Gowesky.

 Instead, LeBlanc argues that certain disputed facts preclude summary judgment in the
defendants' favor. LeBlanc argues that a dispute exists regarding whether Tony Barrientos
led her to believe that Peveto placed obstacles in her path, placed documents out of her reach,
and designed a biased test that would prevent her from scoring well. (8)

 The standard for disability-based harassment, however, is "high." See Gowesky, 321
F.3d at 509. Even if we assume that obstacles were placed in her path on occasion,
documents were placed out of her reach on occasion, and that the test design for the new job
precluded her from scoring well, the instances raised in the summary judgment evidence in
support of these complaints are insufficiently "pervasive" to support a disability-based
harassment claim, as a matter of law. See Gowesky, 321 F.3d at 509; Flowers, 247 F.3d at
236. As was the case in Gowesky, here also, "[i]t is not difficult to conclude on this slender
evidence that no actionable disability-based harassment occurred." See Gowesky, 321 F.3d
at 510.

 We find that the trial court did not err in granting summary judgment to the defendants 
on LeBlanc's disability-based harassment claim. 

VI. Conclusion


 Because the defendants established that they were entitled to summary judgment on
both of LeBlanc's claims as a matter of law, the trial court did not err in granting summary
judgment to them and denying LeBlanc's motion for partial summary judgment. We overrule
LeBlanc's three issues and affirm the trial court's judgment. 

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice



Submitted on March 8, 2007

Opinion Delivered July 26, 2007 

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Section 21.051 provides: 

 An employer commits an unlawful employment practice if because of
race, color, disability, religion, sex, national origin, or age the employer:

 (1) fails or refuses to hire an individual, discharges an individual, or
discriminates in any other manner against an individual in connection with
compensation or the terms, conditions, or privileges of employment; or

 (2) limits, segregates, or classifies an employee or applicant for
employment in a manner that would deprive or tend to deprive an individual
of any employment opportunity or adversely affect in any other manner the
status of an employee.


 Tex. Lab.Code Ann. § 21.051 (Vernon 2006).


2. The ADA similarly provides that discrimination occurs if an employer does not make
"reasonable accommodations to the known physical or mental limitations of an otherwise
qualified individual with a disability who is an applicant or employee. . . [.]" 42 U.S.C.A. §
12112 (b)(5)(A) (2005).
3. Non-exclusive factors that assist in determining whether a job function is essential
include: (1) the employer's judgment about whether the function is an essential one, (2)
written job descriptions, (3) the amount of time that the employee spends performing the
function, (4) the consequences of allowing the employee not to perform the function, and (5)
work experience of persons holding the position. See Ketcher v. Wal-Mart Stores, Inc., 122
F.Supp.2d 747, 752 (S.D. Tex. 2000). 
4. The posted notice described the responsibilities for the position:


 Responsibilities include tutoring, counseling, and directing the
educational efforts of developmental students to help remove any deficiencies;
provide students with a laboratory setting to complete assignments using
computers; supervise lab student assistants and tutors; develop educational
strategies needed for remediation of English, math and reading; review
materials and software in an effort to maintain current state-of-the-art
technology and educational methods; and perform related duties and tasks as
assigned. 

5. Records for the 1999-2001 fall semesters show that the Center assisted 283 computer
students compared with 537 math and English students. Records for the 1999-2001 spring
semesters likewise showed more math and English students (347) used the Center than did
computer students (224). 

6. Lamar did not grant LeBlanc's request for assistance in the restroom every three
hours, which involved lifting her from her wheelchair, but offered instead to arrange her
schedule so that she did not have to work more than three hours at a time. LeBlanc refused
this proposal. At her deposition, LeBlanc further stated that the only accommodation she did
not receive after April 2001 was restroom assistance. Until the time LeBlanc left Lamar,
Tony Barrientos and security guards provided assistance to her vehicle. 
7. Though LeBlanc uses the term "hostile work environment," we consider her claims
to be for "disability-based harassment," the term recognized by the Fifth Circuit. See
Flowers v. S. Reg'l Physician Servs. Inc., 247 F.3d 229, 232, 234-35 (5th Cir. 2001).
8. In her post-deposition affidavit, LeBlanc stated: "Tony Barrientos agreed with me
that Ms. Peveto was discriminating against me and weighting the test so that Barbara Sarver
would have higher scores than me and [Peveto] could recommend [Sarver] based upon the
scores of a discriminatory test." LeBlanc further stated: "I went into work on several
occasions and there would be boxes obstructing my path. It was my understanding from
what I was told that Ms. Peveto placed the objects in my pathway to harass me. To the best
of my recollection it was Tony that told me. I understood him to mean that she put them
there to obstruct my path. Ms. Peveto also put the tests that I was to administer in a filing
cabinet in a drawer that she knew was above my reach. Tony and I both believed she did this
intentionally to harass and intimidate me." 


 In an affidavit presented by defendants, however, Tony Barrientos stated that he never
observed Peveto placing obstacles of any kind in the path of LeBlanc's wheelchair and never
heard Peveto make any derogatory comment about LeBlanc's disability. Barrientos further
stated: "Although Ms. LeBlanc and I had many conversations over the years and considered
one another friends, she never complained to me that anyone in the [Center] was placing
obstacles in her path or that she was upset about the location of files. The first I learned that
[LeBlanc] was voicing such complaints was after this lawsuit was filed." He also said that
he believed the test taken by LeBlanc and Sarver "fairly assessed the skills required for the
position."