

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00197-CV

**BRIAN DUNN, JANEL DUNN**
**AND LEISEL MOSELEY,**

                                                              **Appellants**

 **v.**

**HAPPY HILL FARM ACADEMY/HOME**
**AND HAPPY HILL FARM CHILDREN'S**
**HOME ENDOWMENT FUND, HAPPY HILL**
**FARM CHILDREN HOME, INC., A/K/A**
**DALLAS COWBOYS COURAGE HOUSE,**

                                                              **Appellees**

---

**From the 249th District Court**
**Somervell County, Texas**
**Trial Court No. C09983**

---

## MEMORANDUM OPINION

---

In this appeal, appellants, Leisel Moseley, Brian Dunn, and Janel Dunn, complain about a summary judgment granted in favor of appellee, Happy Hill Farm Academy/Home and Happy Hill Farm Children's Home Endowment Fund, Happy Hill Farm Children's Home, Inc. a/k/a Dallas Cowboys Courage House and/or the

entity that employed plaintiffs as of the date of their discharge ("Happy Hill Farm").[1]

In three issues, appellants assert that summary judgment was improper because (1) there exists a material fact issue as to whether Happy Hill Farm operates as a treatment facility or a mental-health facility under section 161.134 of the Texas Health and Safety Code, *see* TEX. HEALTH & SAFETY CODE ANN. § 161.134 (West 2010); (2) the claims of Brian and Janel Dunn are not time barred[2]; and (3) Happy Hill Farm does not operate under the jurisdiction of a state or federal agency and, thus, former section 242.003's exemptions do not apply. *See* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2476, *repealed by* Act of July 19, 2011, 82nd Leg., 1st C.S., ch. 7, § 1.05(m), 2011 Tex. Gen. Laws 300, 317. We affirm.

## I.    BACKGROUND

Appellants sued Happy Hill Farm, claiming that they were terminated in violation of section 161.134 and former section 242.133 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134; *see also* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2476 (repealed 2011). Specifically, appellants asserted that Janel "reported to the Texas Department of Public Safety a violation of law, to wit:   that Grace Barber, R.N., was improperly executing prescriptions for children without authority to do so and that Dr. John Michael White was involved in the improper execution of prescriptions for children." Brian informed

---

[1] Appellants acknowledge in their brief that they only appeal from the portion of the summary judgment granted in favor of Happy Hill Children's Home, Inc. a/k/a Dallas Cowboys Courage House.

[2] Happy Hill Farm concedes appellants' claims are not time-barred; however, given our disposition of appellants' other two issues, we need not address appellants' second issue because it is not dispositive in this case. *See* TEX. R. APP. P. 47.1.

his supervisor, Susan Blair, about the incidents. According to appellants, a few days after Brian reported the incidents to Blair, Brian's employment was terminated.[3] Janel contended that she was forced to resign her employment because of the removal of Brian's income and benefits and the work environment became intolerable. Moseley, a school nurse, argued that she was wrongfully terminated for reporting "certain violations of law about medical misconduct to the Department of Family and Protective Services regarding employees of Defendants that she believed threatened the health and safety of the children at Defendants' facilities."

Happy Hill Farm answered appellants' lawsuit, generally denying all of the allegations contained in appellants' petition. Appellees subsequently filed a traditional motion for summary judgment, arguing that: (1) the Foundation was not Plaintiffs' employer; (2) chapter 161 of the Texas Health and Safety Code is inapplicable to Happy Hill Farm; (3) Happy Hill Farm is exempt from the provisions of former chapter 242 of the Texas Health and Safety Code; and (4) Brian and Janel's claims are barred by the applicable statute of limitations. Attached to appellees' summary-judgment motion was a license for Happy Hill Farm issued by the Texas Department of Family and Protective Services. Happy Hill Farm also made reference to affidavit and deposition

---

[3] Happy Hill Farm disagrees with Brian's assertion that the termination of his employment was retaliatory. In fact, Happy Hill Farm references the deposition testimony of Todd Shipman, Happy Hill Farm's president and chief financial officer, who stated that Brian was working as an intern in the counseling department and that his employment was terminated because they had extended an offer to a Ph.D. and it was "not financially feasible to have that many people in that department." With respect to Janel, Shipman testified that she voluntarily resigned her position. Shipman also recounted that Moseley's employment was terminated because she was not a registered nurse that Happy Hill Farm needed; she was a licensed vocational nurse.

testimony provided by Todd Shipman, president and chief financial officer of Happy Hill Farm, which was attached to appellant's original petition.

Appellants filed a response and a supplemental response to Happy Hill Farm's traditional summary-judgment motion. On May 10, 2012, without a hearing, the trial court granted Happy Hill Farm's summary-judgment motion. In its final summary judgment order, the trial court ordered that appellants take nothing by way of their lawsuit. This appeal followed.

## II.    STANDARD OF REVIEW

We review a trial court's decision to grant or deny a summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Our review is limited to consideration of the evidence presented to the trial court. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In reviewing a grant of summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When, as here, the trial court does not specify the grounds for its grant of summary judgment, we must affirm the summary judgment if any of the

theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

To prevail on a traditional rule 166a(c) summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 816.

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### III. TEXAS HEALTH AND SAFETY CODE SECTION 161.134

In their first issue, appellants contend that the trial court erred in granting summary judgment because the record contains evidence establishing that Happy Hill

Farm is a treatment or mental-health facility. Happy Hill Farm counters that it is neither a treatment facility nor a mental-health facility. Instead, Happy Hill Farm argues that it "is a boarding school for children seeking a second chance." As such, Happy Hill Farm contends that section 161.134 is inapplicable and summary judgment was proper.

## A.    Applicable Law

Section 161.134 of the Texas Health and Safety Code prohibits retaliation against employees of hospitals, mental-health facilities, and treatment facilities who report "a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule adopted by the Texas Board of Mental Health and Mental Retardation, the Texas Board of Health, or the Texas Commission on Alcohol and Drug Abuse." TEX. HEALTH & SAFETY CODE ANN. § 161.134. The elements of a cause of action under section 161.134 are (1) an employee of a hospital, mental-health facility, or treatment facility, (2) reported a violation of law, (3) to a supervisor, administrator, state regulatory agency, or a law enforcement agency, (4) in good faith, and (5) as a result, the employee was suspended, terminated, disciplined, or otherwise discriminated against. *See Barron v. Cook Children's Health Care Sys.*, 218 S.W.3d 806, 810 (Tex. App.—Fort Worth 2007, no pet.); *see also Word v. Wilson N. Jones Reg'l Health Sys.*, No. 05-06-00881-CV, 2007 Tex. App. LEXIS 6885, at *9 (Tex. App.—Dallas Aug. 28, 2007, no pet.) (mem. op.). Subsection (f) of section 161.134 sets forth the following with respect to the burden of proof:

> A plaintiff suing under this section has the burden of proof, except that it is a rebuttable presumption that the plaintiff's employment was suspended or terminated, or that the employee was disciplined or discriminated against, for making a report related to a violation if the suspension, termination, discipline, or discrimination occurs before the 60th day after the date on which the plaintiff made a report in good faith.

TEX. HEALTH & SAFETY CODE ANN. § 161.134(f).

It is also noteworthy to mention that statutes protecting workers from retaliatory discharge are exceptions to the common law doctrine of employment at will. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996); *see also Word*, 2007 Tex. App. LEXIS 6885, at **10-11. A statute creating a liability that does not exist in the common law is not extended beyond its plain meaning or applied to cases not clearly within its purview. *Cazarez*, 937 S.W.2d at 453. Neither party argues that section 161.134 is ambiguous, and we do not view it as ambiguous. *See Barron*, 218 S.W.3d at 809 (finding section 161.134 is unambiguous); *see also Word*, 2007 Tex. App. LEXIS 6885, at *11 (same). Therefore, we give the statute's words and terms their plain and common meanings. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).

The resolution of this issue hinges on whether Happy Hill Farm is a mental-health facility, a treatment facility, or some other entity that falls within the purview of section 161.134. The definition section of chapter 161 of the Texas Health and Safety Code refers to other sections of the code for definitions of "[m]ental health facility" and "[t]reatment facility." TEX. HEALTH & SAFETY CODE ANN. § 161.131(7), (10) (West 2010). Under section 464.001, a "treatment facility" means a public or private hospital; a detoxification facility; a primary care facility; an intensive care facility; a long-term care

facility; an outpatient care facility; a community mental health center; a health maintenance organization; a recovery center; a halfway house; an ambulatory care facility; or any other facility that offers or purports to offer treatment. *Id.* § 464.001(5) (West 2010). Section 464.001 further defines treatment as "a planned, structured, and organized program designed to initiate and promote a person's chemical-free status or to maintain the person free of illegal drugs." *Id.* § 464.001(4). Section 571.003 defines a "mental health facility" as: (1) "an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person"; (2) "a community center or a facility operated by a community center"; or (3) "that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided." *Id.* § 571.003(12) (West 2010).

## B.    Discussion

In making their argument that Happy Hill Farm is a treatment or mental-health facility, appellants rely heavily on appellees' Employee Handbook and Brian's characterization of his job. With regard to the Employee Handbook, appellants contend that the following provisions support their position:

Basic Child Care

. . . .

An initial evaluation and intake study is mandatory for admittance. This includes physical, educational, and psychological testing. Young people with special needs will be provided with a structured program of professional counsel. The other children have regular sessions with the Farm's Consultant Psychologist, the Therapist, the Social Worker, the COO, the Academy Principal, and the Directors of Living Units to assist

them with family adjustments, personal problems, and interpersonal relationships.

. . . .

The Farm staff, including a consulting psychiatrist, psychologist[,] and a pediatrician, provide the Academy with complete evaluation and testing for each potential applicant to Happy Hill Farm Academy/Home. A program of follow-up is also part of the learning and counseling plan for each child.

. . . .

INTAKE

Upon referral, decisions regarding placement and treatment plans are made by an Admissions Committee. The process initiates with the gathering of all available data, such as the application, social history, psychological reports, psychiatric and neurological evaluations, school records, and medical and dental histories. An evaluation is required, so existing data will be updated, or an evaluation will be arranged. This data is compiled and reviewed by the Committee. If the applicant is accepted, it is with the understanding by the parent/guardian that it is for a trial period.

TREATMENT

Upon acceptance, a diagnostic assessment is made for the needs of each child or young adult, resulting in an individual treatment plan. This plan is periodically re-assessed for modification. This plan is implemented by a qualified staff, consisting of therapists, teachers, and administration. The ongoing staff is assisted by consultants, such as a medical doctor, psychiatrist, psychologist, and other specialists, as the need for their services arises. The parent/guardian is made aware of the progress of the client.

(Emphasis in original).

Appellants also rely on Brian's affidavit, wherein he stated that he "was employed by Happy Hill Farm from January 4, 2004 to May 2008. During that time[,] I

worked as a Living Unit Coordinator and later promoted to a counselor position in

August 2007." Brian also averred that:

> Happy Hill Farm provided mental health services for students living on campus. I considered these out[-]patient mental health services. I provided counseling to students. I performed assessments. I prepared treatment plan designs. I performed progress evaluations. I provided individual therapy with students for issues including but not limited to: family issues; past maltreatment; chemical dependency for both past and present abuse of drugs and/or alcohol; positive coping skills; teaching life skills for anger management, communication skills, goal setting, positive coping[,] and emotional regulation.

> Happy Hill Farm had a planned, structured[,] and organized program designed to initiate and promote a student's drug free status and maintain a student free of illegal drugs. Happy Hill Farm provided students counseling for chemical dependency for both past and present abuse of alcohol and/or drugs. Happy Hill Farm performed drug testing on students. Happy Hill Farm brought the Star Counsel, a non[-]profit agency that promotes drug and alcohol treatment, to the Happy Hill Farm campus to hold twelve-step meetings for children with a history of drug and/or alcohol problems. Happy Hill Farm transported students from campus to and from Alcoholics Anonymous and Narcotics Anonymous meetings to promote and maintain students' drug free status.

We do not believe that the evidence referenced by appellants creates a material

fact issue regarding Happy Hill Farm's status. We agree with appellees that, based on

the definitions contained in the Texas Health and Safety Code, Happy Hill Farm

Academy is not a treatment or mental-health facility. *See id.* §§ 464.001(5), 571.003(12).

Shipman testified via deposition that Happy Hill Farm is "a basic child care facility with

a school, an accredited school." When asked about services provided, Shipman noted:

> Basic, I mean, home, which would be considered, you know, food, housing[,] and schooling, and then we also, you know, provide counseling on—if they need it, on the campus. And I guess the medical care we don't provide. We—we take the kids for medical care. We have a staff—we have nursing. So if kids come on medications, nurses do that.

In addition, the Happy Hill Farm Employee Handbook states that:

> Happy Hill Farm Academy/Home is a private, non-profit, charitable, Texas corporation. The Farm's philosophy of child care is based on the fundamental belief that each individual is a creation of God and made in His image. Therefore, the Farm is an active community where comprehensive educational and training programs are directed to such vital aspects of individual development as self-care, education, social and interpersonal relationships, hygiene, physical fitness, and homemaking abilities. Areas of service include Basic Child Care, the Academy, vocational training opportunities, and the Living Unit.

The Employee Handbook also provides:

> An integral part of the plan for the development and care of the children is the farm on which Happy Hill Farm Academy/Home is located. There are approximately 500 acres of land and wooded pastures. A cattle herd, sheep, horses, donkeys, and all kind of fowl are among the Farm's growing animal population. The Farm raises much of its own food. In addition, and certainly not a secondary consideration, is the wholesome activity connected with the care and feeding of the animals, the joy of growing things, and the healthful area of farming for the children.

Other than unsupported assertions made in Brian's affidavit, there is no evidence in the record demonstrating that Happy Hill Farm operates as a mental-health or treatment facility. In fact, Shipman denied offering drug rehabilitation of any kind. Furthermore, the paragraphs of the Employee Handbook referenced by appellants pertain to diagnostic testing that must be completed prior to a child being accepted to Happy Hill Farm. Moreover, the summary-judgment evidence reflects that Happy Hill Farm facilitates rehabilitation and treatment of its students by taking them to meetings and referring them to outside consultants and providers. We recognize that Shipman acknowledged that there is a medical facility on the campus, which housed two volunteer doctors. However, Shipman explained that the volunteer doctors only

provided basic services, like checkups for children or treating a sore throat. In addition, appellants do not assert that Happy Hill Farm operates as a medical facility. And finally, while there is some evidence indicating that Happy Hill Farm provides counseling services to his students, there is no competent evidence establishing that the nature of these counseling services necessitate a characterization of Happy Hill Farm as a mental-health and treatment facility under the governing statutes.[4] *See id.* §§ 464.001(5), 571.003(12).

In essence, the competent summary-judgment contained in the record does not controvert Happy Hill Farm's contention that it "is a boarding school that offers nursing and counseling services to its residential students." As such, we cannot say that the trial court erred in granting summary judgment as to appellants' claims under section 161.134 of the Texas Health and Safety Code. *See id.* § 161.134; *see also* TEX. R. CIV. P. 166a(c); *Little*, 148 S.W.3d at 381; *Knott*, 128 S.W.3d at 216. Accordingly, we overrule appellants' first issue.

## IV. TEXAS HEALTH AND SAFETY CODE SECTION 242.003'S EXEMPTIONS

In their third issue, appellants assert that the trial court erred in granting summary judgment with respect to their claims under former section 242.133 of the

---

[4] *See* TEX. EDUC. CODE ANN. § 33.002 (West 2012) (providing that school districts, especially those with the highest concentration of students at risk of dropping out of school, must allocate local funds for guidance and counseling programs for students). Further, sections 33.005 and 33.006 of the Texas Education Code state that a school counselor's primary responsibility "is to counsel students to fully develop each student's academic, career, personal, and social abilities" and that the school counselor plans, implements, and evaluates developmental guidance and counseling programs for students. *See id.* §§ 33.005-.006 (West 2012). There is no competent evidence in the record demonstrating that the counseling services provided by Happy Hill Farm to its students deviated from those required by chapter 33 of the Texas Education Code.

Texas Health and Safety Code.[5] Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2476 (repealed 2011). In particular, appellants argue that Happy Hill Farm does not operate under the jurisdiction of a state or federal agency; therefore, it is not exempt under former section 242.003 of the Texas Health and Safety Code. *See generally id.* We disagree.

Former section 242.003 provided the following, in pertinent part:

Except as otherwise provided, this chapter does not apply to:

. . . .

(6) a facility that:

(A) primarily engages in training, habilitation, rehabilitation, or education of clients or residents;

(B) is operated under the jurisdiction of a state or federal agency, including the Department of Assistive and Rehabilitative Services, Department of Aging and Disability Services, Department of State Health Services, Health and Human Services Commission, Texas Department of Criminal Justice, and Department of Veterans Affairs; and

(C) is certified through inspection or evaluation as meeting the standards established by the state or federal agency.

*Id.*

The record reflects that Happy Hill Farm attached to its summary-judgment motion a permit issued on July 22, 1994, indicating that Happy Hill Farm is licensed and has met the minimum standard rules for a "General Residential Operation" set forth by

---

[5] The record reflects that appellants filed suit against Happy Hill Farm in 2008. Former chapter 242 of the Texas Health and Safety Code was repealed in 2011. Because appellants filed suit prior to 2011, former chapter 242 is applicable in this case.

the Texas Department of Family and Protective Services—a state agency.[6]  The permit also states that it is valid until revoked or surrendered—neither of which have happened—and that Happy Hill Farm provides child care and transitional living for 107 children ages five to seventeen.

In any event, appellants contend that Happy Hill Farm is not exempt from former chapter 242 because the Texas Department of Family and Protective Services is not a listed state or federal agency in former section 242.003(6)(B).  *See id.*  We are not persuaded by this argument.  The precise language of former section 242.003(6)(B) indicates that a facility must be operated "under the jurisdiction of a state or federal agency, *including* the Department of Assistive and Rehabilitative Services . . . ." (Emphasis added).  The Code Construction Act, codified in chapter 311 of the Texas Government Code, states that the terms "includes" and "including" are "terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."  TEX. GOV'T CODE ANN. § 311.005(13) (West 2013).  As such, we do not believe that former section 242.003's exemption provision applies only to those agencies listed in former section 242.003(6)(B).  *See id.*; *see also* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2476 (repealed 2011).

Furthermore, it is undisputed that the Texas Department of Family and Protective Services is a state agency.  Therefore, because we have concluded that former

---

[6] In her deposition testimony, Moseley admitted that Happy Hill Farm operates under the rules of a state agency—the Texas Department of Family and Protective Services.

section 242.003's exemption provision is not limited to only those state and federal agencies enumerated in former section 242.003(6)(B), and because it is undisputed that the Texas Department of Family and Protective Services is a state agency, we cannot say that the trial court erred in implicitly concluding that Happy Hill Farm is exempt from former chapter 242. *See* Act of June 14, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2476 (repealed 2011). Accordingly, we cannot say that the trial court erred in granting summary judgment in favor of Happy Hill Farm as to appellant's claims under former section 242.133. *See id.*; *see also* TEX. R. CIV. P. 166a(c); *Little*, 148 S.W.3d at 381; *Knott*, 128 S.W.3d at 216. We overrule appellants' third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed September 5, 2013
[CV06]