**Opinion issued July 23, 2015**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-14-00537-CV

———————————

**FRANCIE WILLIS, Appellant**

**V.**

**BPMT, LLC, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-49638**

---

## O P I N I O N

Appellee BPMT, LLC sued Urban Retreat of Houston, Inc. for damages pursuant to the breach of a lease agreement. Because Urban Retreat's corporate privileges were forfeited for failure to pay franchise taxes, BPMT also sued appellant Francie Willis in her capacity as a corporate officer of the

company, seeking to hold her personally liable for part of the debt. *See* TEX. TAX CODE § 171.255. Willis and BPMT filed competing motions for partial summary judgment on the issue of Willis's personal liability.

The trial court granted BPMT's motion and held Willis liable for part of the debt of Urban Retreat under section 171.255 of the Texas Tax Code. After a trial on the issue of the amount of the debt that could be recovered from Willis, the trial court entered a final judgment which held her personally liable for $38,327.13 and jointly and severally liable with Urban Retreat for a conditional award of $45,000 in attorney's fees.

In this appeal, Willis contends that the trial court erred when it (1) determined that she was personally liable for Urban Retreat's debt under section 171.255; and (2) held her jointly and severally liable with Urban Retreat for conditional attorney's fees.

We conclude that all of Urban Retreat's debt was created or incurred before the due date for the unpaid franchise taxes that resulted in the forfeiture of Urban Retreat's charter. Accordingly, we reverse the trial court's judgment and render a judgment that BPMT take nothing from Willis individually.

## Background

Willis is a corporate officer of Urban Retreat of Houston, Inc, which operates day spas. Beginning in 1995, Urban Retreat leased space in a retail center from BPMT to operate one of its day spas.

For more than a decade, Urban Retreat continued to lease the property while executing renewals and extensions to the lease. Urban Retreat executed the most recent extension in 2006, extending the lease through April 30, 2011. Willis signed the extended lease agreement solely in her capacity as an officer of Urban Retreat.

The rental payments pursuant to the lease agreement consisted of two components. The first component was a fixed charge per square foot, called a "minimum lease." The second component was the tenant's pro-rata share of the building's operating costs, called a "triple-net charge." A BPMT representative explained at trial the method for collecting the triple-net charge. BPMT would estimate the triple-net charge at the beginning of each year, and tenants would pay their pro-rata share of that estimated charge. At the end of the year, once the actual triple-net charge was determined, BPMT would bill or refund tenants for any over- or under-payments.

The parties stipulated that on July 30, 2010, "the Secretary of State forfeited Urban Retreat's charter." Urban Retreat made no further rental payments from

August 2010 until the end of the lease in April 2011, prompting this dispute. The total rent due during that period was $112,735.26.

BPMT sued Urban Retreat for breach of the lease. In the same lawsuit, BPMT alleged that Willis was personally liable for the breach under the Texas Tax Code, which provides that, after the forfeiture of a corporation's corporate privileges for noncompliance with franchise tax requirements, a corporate officer is liable for "each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due . . . ." TEX. TAX CODE § 171.255(a).

The parties filed cross-motions for partial summary judgment on the issue of Willis's liability. While the cross-motions for summary judgment were pending, BPMT and Urban Retreat reached a Rule 11 agreement under which Urban Retreat agreed to liability for actual damages of $137,327.06, $20,000 in attorney's fees, and pre- and post-judgment interest.

In its motion for partial summary judgment, BPMT argued that Willis should be liable under section 171.255 because a "debt" should mean a "legally enforceable obligation measured in a *certain* amount" of money. Even though Urban Retreat entered into the lease extension in 2006, BPMT argued, the triple-net charges did not become "debts" incurred under section 171.255 until the exact charge could be calculated. Because Urban Retreat forfeited its corporate

4

privileges before it breached the lease agreement in August 2010, BPMT asserted that Willis should be personally liable for the unpaid portion of the triple-net charges that were calculated at the end of 2010 and 2011. BPMT also argued that its duty to mitigate damages after Urban Retreat breached the lease further obscured the full measure of "debt" owed until after the lease expired.

Willis disagreed. She argued that a "debt" under section 171.255 is created when the agreement is executed, so the statute imposes liability only on officers for contracts entered into after a corporation forfeits its privileges. According to Willis, the "debt" at issue was created when Urban Retreat executed the lease extension in 2006, even though amount of the triple-net charges was uncertain until after the corporate forfeiture.

The trial court granted BPMT's motion for partial summary judgment on the issue of Willis's liability, and the case proceeded to trial on the issue of damages. The jury charge asked a single question: "What amount of BPMT's damages, if any, were in an amount of money that could not be calculated at the time the Lease Agreement was executed on May 19, 2006?"

Following the verdict, the court entered a judgment against Urban Retreat for the agreed damages of $132,327.06 and attorney's fees of $20,000. The court also entered a judgment against Willis awarding BPMT actual damages of $38,327.13, which was the amount of unpaid rent the jury determined could not be

5

calculated at the time the lease was executed. Additionally, the court's judgment ordered that Willis and Urban Retreat be jointly and severally liable for the agreed $20,000 in trial attorney's fees, as well as an additional $45,000 in conditional appellate attorney's fees.

Willis filed motions to modify the judgment, for new trial, and for judgment notwithstanding the verdict. Her motion for judgment notwithstanding the verdict was denied by order of the trial court; the motions to modify judgment and for new trial were denied by operation of law. This appeal followed.

**Analysis**

Willis brings two issues on appeal. First, she contends that the trial court erred when it held her personally liable under Texas Tax Code section 171.255 for Urban Retreat's obligations under the lease. Second, she argues that the trial court erred when it ordered her liable for $45,000 in conditional appellate attorney's fees in addition to the $20,000 in trial fees awarded against Urban Retreat.

## I.  Officer liability under section 171.255

We review the trial court's award of partial summary judgment under the usual de novo standard. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Here, the summary judgment depends on a question of statutory construction, which we also review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

6

Texas Tax Code section 171.255(a) provides:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

TEX. TAX CODE § 171.255(a).

The primary question in this case is whether a lease obligation that could not be precisely calculated until the end of the lease term did not become a "debt of the corporation that is created or incurred in this state" for purposes of section 171.255(a) until the exact amount of rental charges and other damages related to a breach of the lease became certain. Because Urban Retreat's corporate privileges were forfeited for an unspecified failure and its corporate privileges were never revived, Willis is liable for the unpaid rent under the statute that was debt created or incurred after the forfeiture. *See id.* By contrast, if the charges were created and incurred in 2006, before those events, then Willis is not personally liable.

Willis contends that all of BPMT's damages in this case arise from obligations under the lease agreement, which was executed in 2006. Therefore, she argues that the statute does not impose personal liability on her because this court and others have long recognized that "[u]nder section 171.255, individual liability is imposed only for debts contracted *after* the forfeiture of the right to do business,

7

and has no application to obligations arising or renewed prior thereto." *McKinney v. Anderson*, 734 S.W.2d 173, 174–75 (Tex. App.—Houston [1st Dist.] 1987, no writ); *accord Schwab v. Schlumberger*, 198 S.W.2d 79, 81 (Tex. 1946) (interpreting predecessor statute); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 423 (Tex. App.—Dallas 2012, no pet.); *River Oaks Shopping Ctr. v. Pagan*, 712 S.W.2d 190, 192 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 112 (Tex. App.—Dallas 1984, no writ). This principle has been applied "[e]ven when the exact amount of future debt is unknown at the time the parties entered into the contract." *Serna v. State*, 877 S.W.2d 516, 519 (Tex. App.—Austin 1994, writ denied); *accord Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("The mere fact that the amount of money owed . . . was unspecified at the time of forfeiture does not establish that the debt was created or incurred after forfeiture."). Under the reasoning of these cases, Urban Retreat's debts under the lease agreement were created and incurred in 2006 when the agreement was executed, not in 2011 after the forfeiture of Urban Retreat's corporate privileges.

BPMT, however, argues that the plain meaning of "debt" is "a specified sum of money owing to one person from another, including not only an obligation of a debtor to pay but the right of a creditor to receive and enforce payment." *See Seay v. Hall*, 677 S.W.2d 19, 23 (Tex. 1984) (quoting BLACK'S LAW DICTIONARY 363

(5th ed. 1979)), *superseded by statute on other grounds as stated in Palmer v. Coble Wall Trust Co.*, 851 S.W.2d 178, 181 (Tex. 1992); *accord* 26 C.J.S. *Debt* § 1 (1956). Thus, BPMT argues that the uncertain rental charges only became "debts" under the statute after forfeiture, and at a later time when the amount of money owed became certain.

In our resolution of this dispute about the interpretation of a statute, we do not write on a blank slate. The statutory scheme at issue was initially adopted in 1893[1] and codified in the Revised Civil Statutes of 1895 at Title 104 (Taxation), ch. 9, arts. 5243i–5243j. The key statutory terminology at issue, involving the timing of corporate "debts . . . created or incurred," can be traced to a 1907 addition to the statutory scheme,[2] codified in the Revised Civil Statutes of 1911 at Title 26, ch. 3, art. 7399.[3] And the terms "created" and "incurred" were interpreted

---

[1]    Act approved May 11, 1893, 23rd Leg., R.S., ch. 102, §§ 5–6, 1893 Tex. Gen. Laws 156, 158, *reprinted in* 10 H.P.N. Gammel, *The Laws of Texas 1822–1897*, at 586, 588 (Austin, Gammel Book Co. 1898).

[2]    Act of May 16, 1907, 30th Leg., 1st C.S., ch. 23, § 8, 1907 Tex. Gen. Laws 502, 505 (former TEX. R. CIV. STAT. art. 7399), *repealed by* Act of July 30, 1959, 56th Leg., 3rd C.S., ch. 1, § 7, 1959 Tex. Gen. Laws

[3]    Former article 7399 provided, in relevant part:

> . . . each and every director and officer of any corporation whose right to do business within this state shall be so forfeited shall, as to any and all *debts of such corporation which may be created or incurred*, with his knowledge, approval and consent, within this state, after such forfeiture by any such directors or

9

by the Supreme Court of Texas in the case of *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79 (Tex. 1946), in which the meaning of "create" in this specific context was held to be "to bring into existence something which did not exist," while "incurred" was interpreted to mean "brought on," "occasioned," or "caused." *Schwab*, 198 S.W.2d at 81. Subsequent revisions to the statute have not altered the "created or incurred" terminology or altered the fundamental substantive rule that an officer of a corporation that has forfeited the right to do business can be held liable for corporate "debts" that were "created or incurred" after such forfeiture.[4]

---

officers, and before the revival of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such directors and officers of such corporation were partners.

[4] *See* Act of July 30, 1959, 56th Leg., 3rd C.S., ch. 12, § 1, art. 12.14, 1959 Tex. Gen. Laws 187, 312 ("Each director and officer of any corporation whose right to do business within this State shall be so forfeited shall, as to any and all *debts* of such corporation, which shall include all franchise taxes and penalties thereon which shall become due and payable subsequent to the date of such forfeiture, and which may be *created or incurred*, with his knowledge, approval and consent, within this State, after such forfeiture by any such directors or officers, and before the revival of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such directors of such corporations were partners." (emphasis supplied)); Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, § 9, 1961 Tex. Gen. Laws 71, 110–11 (no statutory revision relevant to "created or incurred" terminology); Act of May 24, 1969, 61st Leg., R.S., ch. 801, § 11, 1969 Tex. Gen. Laws 2366, 2372 (no statutory revision relevant to "created or incurred" terminology); Act of May 25, 1977, 65th Leg., R.S., ch. 671, §1, 1977 Tex. Gen. Laws 1692, 1692 ("Each director

The disputed term "debt" is not currently defined by the Tax Code. Before 1987, there was no statutory definition for "debt" under section 171.255 or any of its predecessor versions dating back to 1907. In 1987, however, the Legislature defined "debt" for purposes of chapter 171 as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, sec. 171.109, 1987 Tex. Gen. Laws 1734, 1735. Effective January 1, 2008, the Legislature repealed that definition of "debt." *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, sec. 171.109, 2006 Tex. Gen. Laws 1, 24.

Because the Chapter 171 of the Tax Code does not define "debt," we construe the term according to its plain meaning unless such a construction leads to absurd results or a contrary intention is apparent from the context. *See City of Rockwall*, 246 S.W.3d at 625–26. When the statute's language is clear and

and officer of any corporation whose right to do business within this State shall be so forfeited shall, as to any and all *debts* of such corporation, which shall include all franchise taxes and penalties thereon which shall become due and payable subsequent to the date of such forfeiture, and which may be *created or incurred* within this State, after the report or payment becomes due and before the revival of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such directors and officers of such corporation were partners." (emphasis supplied)); Act effective Jan. 1, 1982, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490, 1704 (enacting current version of § 171.255).

unambiguous, we do not resort to construction or extrinsic aids to construe the language. *See id.* at 626.

Despite BPMT's characterization of the statute, the term "debt" has been given broad or narrow meanings, depending on its context. Over a century ago, the Supreme Court of Texas recognized:

> In common parlance the word "debt" is sometimes used to denote any kind of a just demand, and has been differently defined, owing to the subject-matter of the statutes in which it has been used; and while ordinarily it imports a sum of money arising upon a contract, express or implied, in its more general sense it means that which one person is bound to pay or perform for another.

*Barber v. City of East Dallas*, 18 S.W. 438, 439 (Tex. 1892); *see also Wilburn v. State*, 824 S.W.2d 755, 759 (Tex. App.—Austin 1992, no writ) (observing different meanings of the word "debt" in different legal contexts). Although courts frequently consult dictionaries to ascertain the plain meaning of an undefined term, *see, e.g.*, *Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013), such an approach fails to resolve conclusively the meaning of "debt" in this case. *Compare* BLACK'S LAW DICTIONARY 462 (9th ed. 2009) (defining debt in multiple ways, including narrowly as "Liability on a claim; a specific sum of money due by agreement or otherwise"), *with* MERRIAM WEBSTER COLLEGIATE DICTIONARY 297 (10th ed. 1993) (defining debt broadly as "something owed" or "obligation").

More importantly, we are bound by previous interpretations of section 171.255 issued by the Supreme Court or by a prior opinion of this court. "[T]he

12

doctrine of stare decisis has its greatest force" in the area of statutory construction. *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) (quoting *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex. 1968)). As such, we are obliged to interpret section 171.255 and its statutory predecessors as the Supreme Court and this court have, with the recognition that the statute is "penal in nature," and therefore must be "strictly construed" to protect individuals against whom liability is sought. *Schwab*, 198 S.W.2d at 81 (observing that direct statutory ancestor of current section 171.255 was "meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation"); *accord Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *McKinney*, 734 S.W.2d at 174. BPMT bears the burden of affirmatively proving that the "debts" for which it seeks to hold Willis liable under section 171.255 were created or incurred after the date of events leading to the forfeiture of Urban Retreat's corporate privileges. *See Wilburn*, 824 S.W.2d at 763.

In light of these principles, we consider whether a "debt" can be created or incurred only when the specific amount of money owed becomes certain. Despite BPMT's citations to authority defining a "debt" as a "specific sum of money due by agreement or otherwise," *e.g.*, BLACK'S LAW DICTIONARY 462 (9th ed. 2009),

such an interpretation is not mandated here. Decades of decisions in Texas courts have held in this context that corporate debts are created and incurred when an agreement is executed. *See, e.g.*, *Schwab*, 198 S.W.2d at 81 ("[L]iability imposed under the [prior statute] is only for debts contracted after business, and has no application to the renewal of obligations arising prior thereto."); *McKinney* 734 S.W.2d at 174–75 (holding damages for breach of lease were created and incurred at execution of agreement because "individual liability is imposed only for debts contracted *after* forfeiture of the right to do business, and has no application to obligations arising or renewed prior thereto"); *River Oaks Shopping Ctr.*, 712 S.W.2d at 192 (holding debts for breach of lease agreement were created and incurred at execution of lease). The fact that the specific amount of money owed is not known until later does not vitiate this principle. *Serna*, 877 S.W.2d at 519; *Rogers*, 696 S.W.2d at 677; *Curry Auto Leasing*, 683 S.W.2d at 112.

BPMT attempts to breathe new life into the repealed definition of "debt," which for around 20 years defined the term as an enforceable obligation measured "in a certain amount of money." *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, sec. 171.109, 1987 Tex. Gen. Laws 1734, 1735 (repealed 2006). That definition applied in the section 171.255 context to disputes which arose while the definition was part of chapter 171. *See Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.). But it has since

14

been repealed, which indicates both that the Legislature no longer required that specific understanding of "debt" to apply to a case arising under chapter 171, and also that the Legislature would have anticipated that the courts would revert to applying the understanding of "debt" that prevailed before the statutory definition was enacted. We presume that the Legislature knew of the decisions construing section 171.255 when it repealed the definition of debt in this chapter. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999); *accord Utts v. Short*, 81 S.W.3d 822, 836 (Tex. 2002) (Baker, J., concurring). Therefore, we must presume that the Legislature intended that the repeal of its definition of debt would result in courts considering the term "debt" as they did before the definition was enacted.

BPMT also asserts that section 171.109 was repealed for reasons unrelated to the definition of "debt" as it related specifically to corporate officer liability under section 171.255. Be that as it may, we cannot infer any legislative command to continue to apply a repealed definition based upon speculation that the Legislature did not mean to affect the meaning of "debt" in section 171.255, especially when the definition of "debt" in section 171.109 applied to all of Chapter 171. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, sec. 171.109, 1987 Tex. Gen. Laws 1734, 1735 (repealed 2006).

BPMT further observes that section 171.255 uses the disjunctive "or" to provide corporate officer liability on a debt that is "created *or* incurred" after

15

forfeiture of a corporation's privileges. TEX. TAX CODE § 171.255(a) (emphasis supplied). It thus argues that, in order to give meaning to each part of the statute, we must give distinct meanings to "created" and "incurred" such that a debt could be created and incurred at different times. On this theory, the debt in this case could have been "created" before the events leading to Urban Retreat's corporate forfeiture yet "incurred" later, once the amount of money owed became certain. While we can imagine circumstances in which a debt might be created and incurred at different times,[5] BPMT has not carried its burden to show how this case presents such a scenario. On the contrary, we are obliged to follow this court's precedent in *McKinney*, which held in this same context that rental payments on a lease contract constitute a debt that is both created and incurred when the lease contract is executed. *See McKinney*, 734 S.W.2d at 174–75.

In light of the decades of precedent holding that a debt is both created and incurred for purposes of section 171.255 at the time a lease agreement is executed, even if the amount of the debt is uncertain, that the statute is penal in nature and therefore must be construed in favor of a corporate officer, and the Legislature's repeal of the contrary definition on which BPMT relies, we hold that Urban

---

[5] One such example would be presented by a corporation that assumes liability and "incurs" a debt as the transferee on a note or piece of mortgaged real property. That debt would have been "created" when the note was executed or the property mortgaged, although the transferee corporation didn't "incur" the debt until the note or property was transferred.

Retreat's debt in this case was created and incurred before the events leading to corporate forfeiture in 2010. Thus, Willis could not be liable under section 171.255 for Urban Retreat's debts pursuant to the 2006 lease agreement.

We sustain Willis's first issue.

## II. Attorney's fees

In her second issue, Willis argues that the trial court erred when it held her jointly and severally liable for an award of conditional attorney's fees in the event of an appeal by Urban Retreat. Because we sustain Willis's first issue and hold that she is not personally liable for Urban Retreat's debt in this case, we also sustain her second issue and hold that there is no statutory or contractual basis to hold her liable for the award of attorney's fees. *See Rossman v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 804 (Tex. App.—Dallas 2015, pet. filed) (holding that appellees were not entitled to attorney's fees when they were no longer prevailing party after judgment was reversed).

## Conclusion

We reverse the trial court's judgment as to Willis and render judgment BPMT take nothing on its claims against her.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.