**Opinion issued August 21, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00755-CV

————————————

**RAUL AMPARO ZUNIGA RODRIGUEZ AND ANA MARIA ORTIZ MARTINEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES, AND HEIRS OF THE ESTATE OF RAUL AMPARO ZUNIGA ORTIZ JR., AND JUANA GUADALUPE MARTINEZ, AS NEXT FRIEND OF SEBASTIAN ZUNIGA AND WENDY ZUNIGA, HEIRS OF THE ESTATE OF RAUL AMAPRO ZUNIGA ORTIZ JR., Appellants**

**V.**

**CONWAY WAAK JR. AND MARLENE WAAK, D/B/A CARMINE CHAROLAIS RANCH, AND CARMINE CHAROLAIS RANCH, Appellees**

———————————————————————————————————————

**On Appeal from the 155th District Court**
**Fayette County, Texas[1]**

———————————————————————————————————————

[1]     The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas.  Misc. Docket No. 17-9128 (Tex. Sept. 28, 2017); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases).  Because we do not find any controlling authority from the Austin Court of Appeals for the issues raised, we apply precedent of this Court. *See* TEX. R. APP. P. 41.3

## OPINION

Raul Amparo Zuniga Rodriguez, Ana Maria Ortiz Martinez, and Juana Guadalupe Martinez (the Zunigas) filed suit against Conway Waak, Jr. and Marlene Waak, asserting claims arising from the death of Raul Amparo Zuniga Ortiz, Jr. (Zuniga). The Waaks sought summary judgment, arguing that the Zunigas' claims were governed by the Farm Animal Activities Act (FAAA or the Act).[2] The trial court granted summary judgment in full, holding the Zunigas' claims were barred by the Act. In three issues on appeal, the Zunigas argue that the Act does not bar their claims.

We reverse and remand.

## Background

The Waaks own a ranch in Fayette County, Texas. They breed, raise, and sell purebred Charolais and Braford cattle on the ranch. Both have worked with cattle their entire lives.

Zuniga began working for the Waaks in 2005. He moved onto the ranch and began working for the Waaks full time in 2007 or 2008. His responsibilities involved

---

(requiring reviewing court to "decide the case in accordance with the precedent of the transferor court" when courts' precedents are inconsistent).

[2]  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 87.001–.005 (West 2017).

feeding, moving, and monitoring the cattle. He frequently performed those duties alone.

Zuniga died on October 2, 2013. The day before he died, the Waaks instructed Zuniga to move some cattle to a different pasture. Conway Waak asked Zuniga if he needed help. Zuniga said he did not. There were about twenty cattle to be moved, including one calf and one bull. The bull had been with the cows to breed for about two to three months. On October 2, Zuniga began to move the cows to a different pasture. Zuniga had moved all of the cows except for the bull, the calf, and the calf's mother before he was eventually found dead from severe blunt-force impact wounds determined to have been caused by the bull.

The Waaks did not carry workers' compensation insurance for their employees. The Zunigas brought suit against the Waaks to recover damages for Zuniga's personal injuries and death. In their live petition, the Zunigas asserted wrongful death and survival claims. Specifically, the family asserted that the Waaks were negligent by failing to provide proper safety equipment and failing to adequately warn Zuniga of dangers existing on the premises, among other things.

The Waaks eventually filed a partial motion for traditional summary judgment. In it, the Waaks argued that the FAAA—which provides liability protection for injuries arising out of certain farm activities in the form of a waiver of liability—applied to Zuniga as an employee of the ranch and thereby governed the

3

Zunigas' claims and waived the Waaks' liability to the Zunigas. The Waaks recognized in the motion that the Act has exceptions to the waiver of liability. They asked the court to grant summary judgment on the Zunigas' claims except to the extent that the claims fell within the exceptions to the FAAA.

In their summary judgment motion, the Waaks acknowledged *Dodge v. Durdin*, 187 S.W.3d 523 (Tex. App.—Houston [1st Dist.] 2005, no pet.), a case from this Court which held that the Equine Act, the predecessor to the FAAA, did not apply to employees. The Waaks urged the trial court not to adopt the reasoning of the case, critiquing the justifications this Court used to reach our holding. They argued that Zuniga was an independent contractor and, as such, a "participant" engaged in a farm animal activity under the FAAA when he died, and thus their liability for claims for his injuries was waived.

The Zunigas responded to the motion. They argued that Zuniga was an employee of the Waaks. As a result, they urged the trial court to apply the reasoning from this Court in *Dodge* and to rule that, like the Equine Act, the FAAA does not apply to their claims and does not waive the Waaks' liability for Zuniga's injuries. They are, instead, that Zuniga was a "farm and ranch employee" for whom the Waaks were required to maintain workers compensation insurance and did not, subjecting them to the Zunigas' common law claims.

The trial court ruled that the Zunigas' claims were governed by the FAAA and that the Act waived the Waaks' liability to the Zunigas. It granted complete summary judgment in favor of the Waaks on their claims. The Zunigas appealed.

**Standard of Review**

A summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional summary-judgment motion asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

A party moving for traditional summary judgment on a claim for which it does not bear the burden of proof must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *See Am. Tobacco*

*Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). If the movant meets its burden, the burden then shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

## Applicability of the FAAA

In their first issue, the Zunigas argue that the trial court erred by determining that their claims were waived by the FAAA's waiver of liability. In their second issue, they argue that Zuniga was not a "participant" in a farm animal activity as that term is defined within the Act, but an employee of the Waaks, and therefore, under *Dodge* and other law, the Act does not bar their claims. In their third issue, they argue that they raised at least a fact issue as to whether the Waaks were exempt from the application of the Texas Workers' Compensation Act and were, therefore, required to maintain workers' compensation insurance for their employees and did not. The first two issues concern the proper construction of the FAAA and our interpretation of its predecessor, the Equine Act, in *Dodge*. The third concerns the construction of the Workers' Compensation Act and its application to this case. All three issues require us to construe the applicable statutes.

## A. Standard of Review of Statutory Interpretation

Statutory interpretation is subject to de novo review. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). Statutory language must be analyzed

6

in its context, considering both the specific sections at issue and the statute as a whole. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). "If a statute is worded clearly, we must honor its plain language, unless that interpretation would lead to absurd results." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013). We interpret a statute by applying the plain meaning of the words used in the statute. *See Lippincott*, 462 S.W.3d at 509. "We read statutes contextually to give effect to every word, clause, and sentence, because every word or phrase is presumed to have been intentionally used with a meaning and a purpose." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). We rely solely on the plain meaning of the words used "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.*; *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *accord Tanya L. McCabe Tr. v. Ranger Energy LLC*, 531 S.W.3d 783, 794 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008); *accord Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).

"A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute. Only when it is necessary to give

7

effect to the clear legislative intent can we insert additional words into a statutory provision." *Jones v. Liberty Mutual Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988) (internal citations omitted); *see also City of Rockwall*, 246 S.W.3d at 629; *Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991) (observing, "It is the obligation of the legislature, rather than the courts, to develop a workable definition of [a given statutory term]"). However, "[w]hile 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'" *Castleman*, 546 S.W.3d at 688. "[W]e consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Rodriguez*, 547 S.W.3d at 839 (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017)). We also "construe statutes so as to harmonize [them] with other relevant laws, if possible." *Id.* at 838–39.

## B.     The Farm Animals Activities Act

The FAAA was originally known as the Equine Act and waived liability of "equine activity sponsors" and "equine professionals," among other persons, for damages resulting from dangers or conditions that are an inherent risk of an equine activity. *See Dodge*, 187 S.W.3d at 527. It has since been updated and renamed to apply to a broader array of persons, animals, and activities. *See* Act of May 23,

2011, 82nd Leg., R.S., ch. 896, 2011 Tex. Gen. Laws 2288, 2288–90 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 87.001–.005 (West 2017)). Most importantly, with the update, the Act applies to farm animal activities related to cattle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.001(2-a)(B) (West 2017).

As updated, section 87.003 of the FAAA waives liability against "any person, including a farm animal activity sponsor, farm animal professional, livestock producer, livestock show participant, or livestock show sponsor," for "property damage or damages arising from the personal injury or death of a participant in a farm animal activity or livestock show if the property damage, injury, or death results from the dangers or conditions that are an inherent risk of a farm animal activity or the showing of an animal on a competitive basis in a livestock show." *Id.* § 87.003 (West 2017). Section 87.003 explicitly identifies "dangers or conditions that are an inherent risk of a farm animal activity" to include "the propensity of a farm animal or livestock animal to behave in ways that may result in personal injury or death to a person on or around it," and "the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over a farm animal or livestock animal or not acting within the participant's ability." *Id.* § 87.003(1), (5).

Section 87.001 defines "engages in a farm animal activity" to mean "riding, handling, training, driving, loading, unloading, assisting in the medical treatment of,

9

being a passenger on, or assisting a participant or sponsor with a farm animal." *Id.* § 87.001(1).

"Farm animal activity," in turn, is defined to include a broad number of activities. *See id.* § 87.001(3). It includes, for example, training or teaching activities that involve a farm animal, boarding a farm animal, "riding, inspecting, evaluating, handling, loading or unloading a farm animal belonging to another," and providing medical treatment for a farm animal. *Id.* § 87.001(3)(B)–(D), (G).

"Farm animal activity sponsor" is defined as including "a person or group who sponsors, organizes, or provides the facilities for a farm animal activity, including facilities for a pony club, 4-H club, hunt club, therapeutic riding program, or high school or college class, program, or activity, without regard to whether the person operates for profit." *Id.* § 87.001(4)(A).

"Farm animal professional" is defined as "a person engaged for compensation: (A) to instruct a participant or rent to a participant a farm animal for the purpose of riding, driving, or being a passenger on the farm animal; (B) to rent equipment or tack to a participant; (C) to examine or administer medical treatment to a farm animal as a veterinarian: or (D) to provide veterinarian or farrier services." *Id.* § 87.001(5).

"Livestock producer" is defined as "a person who owns, breeds, raises, or feeds livestock animals." *Id.* § 87.001(6-a).

"Participant" is defined to mean "with respect to a farm animal activity, a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." *Id.* § 87.001(9)(A).

Finally, section 87.004 provides certain exceptions to the exemption from liability provided to a "person" defined by section 87.003. *See id.* § 87.004 (West 2017). In relevant part, it limits the circumstances under which "[a] person, including a farm animal activity sponsor, farm animal professional, livestock show participant, or livestock show sponsor, is liable for property damage or damages arising from the personal injury or death caused by a participant in a farm animal activity or livestock show," if, among other things, "the person provided the farm animal or livestock animal and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the farm animal activity . . . and determine the ability of the participant to safely manage the farm animal or livestock animal, taking into account the participant's representations of ability." *Id.* § 87.004(2).

## C. Zuniga's Status as a "Participant" Under the FAAA

The parties disputed before the trial court whether Zuniga was a "participant" in a "farm animal activity" for which liability was waived for the Waaks under the terms of the FAAA.

11

With the statutory terms set out above in mind, we hold that Zuniga was not a "participant" in a farm animal activity as contemplated by the FAAA. First, we observe that the definition of a "farm animal activity sponsor" in section 87.001(4) does not expressly or impliedly include a ranch owner who raises livestock for consumption and employs ranch hands to handle them. A ranch owner, such as the Waaks, could be exempted from liability for the personal injuries and death of a plaintiff, such as Zuniga, under the FAAA only as a "livestock producer," or "a person who owns, breeds, raises, or feeds livestock animals," and then only if the plaintiff who was injured or killed was a "participant" in a farm animal activity. *See id.* §§ 87.001(6-a), (9), 87.003.

We further observe that the definition of a "participant" in a farm animal activity in section 87.001(9) does *not* include a person employed on a ranch or farm for compensation to perform the activities of a ranch hand, as Zuniga was here. Rather, a participant is clearly defined by the plain meaning of the statute as a person who engages in the activity as "an amateur or professional," a person who pays for the activity, or a person who participates in a "farm animal activity" for free. A "farm animal professional" is then further defined as "a person engaged for compensation: (A) to instruct a participant or rent to a participant a farm animal for the purpose of riding, driving, or being a passenger on the farm animal; (B) to rent equipment or tack to a participant; (C) to examine or administer medical treatment

12

to a farm animal as a veterinarian: or (D) to provide veterinarian or farrier services." *Id.* § 87.001(5).

We "may not judicially amend a statute and add words that are not implicitly contained in the language of the statute." *Jones*, 745 S.W.2d at 902. Thus, Zuniga— as a hired ranch hand—was not a "participant" in a farm animal activity, as defined by the FAAA; and, therefore, the FAAA does not apply to this case and waive the Waaks' liability for the Zunigas' claims.

Our construction of the FAAA in this case accords with our construction of the predecessor statute, the Equine Act, in *Dodge*, 187 S.W.3d 527–30, which we are bound to follow as precedent under the doctrine of stare decisis. *See Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008); *Martinez v. Houston McLane Co., LLC*, 414 S.W.3d 219, 222–23 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (observing stare decisis promotes efficiency, fairness, and legitimacy in judicial system and allows parties to justifiably rely on our past opinions, promoting predictability in law); *see also Willis v. BPMT, LLC*, 471 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (stating, "'the doctrine of stare decisis has its greatest force' in the area of statutory construction") (quoting *Mitchell*, 276 S.W.3d at 447).[3] This is because if the Legislature does not modify the statute to

---

[3] We note, however, that "the doctrine [of stare decisis] is not absolute." *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008). When the reasons for adhering to our prior holding no longer further the interests of "efficiency, fairness,

13

abrogate the court's interpretation, "there is little reason for the court to reconsider whether its decision was correct." *Mitchell*, 276 S.W.3d at 447. Here, the Legislature did not abrogate the parts of the statute material to our determination; it merely extended relevant provisions to livestock producers and participants in farm animal activities involving livestock. We, therefore, turn to *Dodge*.

In *Dodge*, brought under the predecessor statute, the Equine Act, a stable employee brought a negligence action against her employer and supervisor at the stables, claiming that she had sustained an injury when an untamed horse kicked her in the abdomen as she was administering an oral deworming medication to it, as directed by her employer and supervisor. 187 S.W.3d at 525. The injured plaintiff asserted that the Equine Act did not preclude the defendants' liability to her because she was an employee rather than a participant in an equine activity as defined under the Act. *Id.* As here, at the time of the injury, the plaintiff's employer did not carry workers' compensation insurance. *Id.* at 526.

We held in *Dodge* that employees of the owner of a farm animal were not included in the definition of participant under the Equine Act. *Id.* at 530. We presented three grounds to support our holding: statutory construction of the

---

and legitimacy," and when "the general interest will suffer less" from a departure in the law than from strict adherence, then we should depart from our prior holding. *Id.* "[S]*tare decisis* does not compel perpetuating an interpretation of [a statute] that . . . cannot be discerned from the text of the statute." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 779 (Tex. 2011).

14

definition of "participant," legislative history, and the consequences of alternative constructions. *Id.* at 527–30.

For statutory construction, we focused on the phrase "without regard to whether . . . the person pays for the activity or participates in the activity for free" within the definition of "participant." *Id.* at 528 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 87.001(9)). We reasoned that, because employees are paid for activities rather than paying or doing them for free, this phrase suggested that the definition was limited to consumers, not employees. *Id.*

We supported our reasoning as to the Legislature's intent in enacting the Equine Act by reference to the legislative history of the statute and the circumstances under which it was enacted. We observed that a legislative report had cited the negative impact of liability for horses on the tourism industry, which "'ha[d] been adversely affected by the expansion of liability as well as charitable, philanthropic and educational organizations,'" and was "silent about any intent to affect the employer-employee relationship." *Id.* at 528–29 (citing SENATE NATURAL RES. COMM., BILL ANALYSIS, Tex. H.B. 280, 74th Leg., R.S. (1995)). We reasoned that "[t]he statute as a whole suggests that the nature and object to be obtained by the Equine Act [was] to protect the tourism industry, not to abrogate the regulation of employer-employee relationships in Texas, as defined in the Labor Code." *Id.* at 529.

15

We further reasoned that "the Equine Act lacks express legislative intent to abrogate employer duties as delineated in the Workers' Compensation Act." *Id.* at 530. We stated, "Employers owe certain nondelegable and continuous duties to employees acting in the course and scope of their duties, including the duties to warn about the hazards of employment, to supervise activities, to furnish a reasonably safe workplace, and to furnish reasonably safe instrumentalities with which to work." *Id.* at 529 (citing *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975)). And we pointed out that the Legislature enacted the Texas Workers' Compensation Act in the Labor Code in response to the needs of workers who were increasingly being denied recovery for injuries received in "escalating industrial accidents." *Id.* (citing *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)).

We specifically observed that the Workers' Compensation Act allows injured workers whose employers provide workers' compensation insurance to recover damages without establishing the employer's fault and without regard to their own negligence; and, in exchange, employees receive "a lower but more certain recovery than would have been possible under the common law." *Id.* To prevent employers from opting out of the Act, the Legislature enacted Labor Code section 406.033, which precludes non-subscribing employers from asserting the employee's contributory negligence or assumption of risk or the negligence of another employee as the cause of their injuries. *Id.* (citing TEX. LAB. CODE ANN. § 406.033 (West

16

2015)).  We also observed that the Texas Supreme Court had held that courts should construe the Workers' Compensation Act liberally in favor of the injured worker and should not construe the statute "in a manner that supplies, by implication, restrictions on an employee's rights not found in section 406.033's plain language." *Id.* (citing *Kroger*, 23 S.W.3d at 349).

We concluded in *Dodge*, "Because the Equine Act does not expressly state an intent to abrogate the Workers' Compensation Act and the Legislature's policy to protect workers, the consequence of including employees among those subject to the Equine Act would be to remove well-settled employer duties under the Labor Code without express, supporting legislative intent." *Id.* at 530.  Accordingly, we held that, "although the Equine Act does not specifically exclude employees acting within the course and scope of their employment from the definition of 'participant' under the Act, the statutory language specifically encompasses those who pay to participate in the equine activity or who choose to participate for free"; and that, by contrast, employees neither pay to participate in the activity nor participate in it for free, but rather are paid for their labor. *Id.*  We further held that, because the Equine Act was intended to limit liability for those involved in the tourism industry, not to limit employees' rights against their employers, and because the Act lacked express legislative intent to abrogate employer duties as delineated in the Workers'

Compensation Act, an employee covered by the Workers' Compensation Act is not "a participant in an equine activity under the Equine Act." *Id.*

Finally, we observed in *Dodge* that "[a]n employer who does not subscribe to workers' compensation insurance coverage is responsible for work-related injuries under common-law negligence principles." *Id.* (citing TEX. LABOR CODE ANN. § 406.033(d)). In such a case, "To recover, the plaintiff must prove negligence of the employer, or of an agent or servant of the employer, acting within the general scope of the agent's or servant's employment." *Id.* And, to establish negligence, the plaintiff must produce evidence establishing a duty owed the employee by the employer, breach of the duty, and damages proximately caused by the breach. *Id.* The plaintiff in *Dodge*, in response to the stable owners' no-evidence motion for summary judgment, raised a fact issue with respect to every element of her negligence cause of action.[4] *Id.* at 531–32. Therefore, because the Dodge's employer—the stable owners—did not carry workers' compensation insurance, we reversed the summary judgment entered in favor of the employer-stable owners and remanded the case for further proceedings. *Id.* at 532.

The Waaks urge us to overrule *Dodge* on the ground that other courts, most recently the Fourteenth Court of Appeals, have disagreed with the reasoning in

---

[4] We note that Dodge's status as an employee was not contested. *Dodge v. Durdin*, 187 S.W.3d 523, 529–31 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

18

*Dodge* that the Legislature intended to limit liability under the Equine Act to those "involved in the tourism industry." *Id.* at 530. We decline the invitation.

The most recent case to construe the meaning of "participant" under the FAAA, *Young v. McKim*, 373 S.W.3d 776, 780–81 (Tex. App.—Houston [14th Dist.] 2012, pet. denied), was, like *Dodge*, actually brought under the predecessor Equine Act. In that case, a woman, Young, worked at some stables, helping to take care of horses that various owners kept there. *Id.* at 778. While she was walking one horse to a paddock, the horse kicked her. *Id.* at 779. She sued the McKims, the owners of the stables, for negligence, and they sought summary judgment on her claims, arguing that they were immune from liability to her under the Equine Act—which, at the time of her injury, had not been amended—because her alleged injuries arose from risks inherent in an equine activity. *Id.* The trial court agreed with the McKims and granted summary judgment in their favor. *Id.*

On appeal, Young argued that she was not a "participant" in an "equine activity" when she was injured, and, therefore, the Equine Act did not apply to preclude her claims against the stable owners. *Id.* at 781. She cited the statement in *Dodge* that the legislative history of the Equine Act suggested that the Legislature "enacted the Equine Act to limit the liability of equine sponsors to tourists and other consumers of equine activities." *Id.* at 780. The Fourteenth Court of Appeals disagreed with the statement "that only consumers of equine activities qualify as

19

participants in equine activities as defined in the Equine Act." *Id.* at 780–81. It reasoned:

> The Equine Act is a comprehensive limitation of liability for equine activities of all kinds. The Equine Act applies to all "participants." A "participant" in an equine activity is defined in the statute as "a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free." Under the statute, "'engages in an equine activity' means riding, handling, training, driving, assisting in the medical treatment of, being a passenger on, or assisting a participant or sponsor with an equine animal."

*Id.* at 781 (internal citations omitted). The court observed that "the statute specifically includes as a category 'assisting in the medical treatment of' an equine animal," which was the activity being performed by the plaintiff when she was injured. *Id.*

The court of appeals then addressed whether Young was the McKims' employee and therefore entitled to bring her negligence claims against them, since they had not subscribed to the Workers' Compensation Act, which would have provided insurance coverage for her injuries, or whether she was an independent contractor and therefore not entitled to workers' compensation insurance coverage. *Id.* at 782. In making this determination, the court relied upon the reasoning in *Dodge* "that if an employee were determined to be a participant in an equine activity, it would abrogate employer duties delineated in the Workers' Compensation Act." *Id.*

20

The court applied the test established by the Texas Supreme Court to determine whether a worker such as Young was an employee rather than an independent contractor under the facts of the case, namely "whether the employer has the right to control the progress, details, and methods of operations of the work," and concluded that "the summary-judgment evidence conclusively shows that Young was an independent contractor when [the horse] Jasper kicked her." *Id.* (citing *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (establishing test)).

The court reasoned that because Young was not an employee of the stables but rather an independent contractor, she was not excluded as a participant in an equine activity covered by Equine Act section 87.001, and the Act proscribed her claims.[5] *Id.* at 781 (citing *Johnson v. Smith*, 88 S.W.3d 729, 732 (Tex. App.—Corpus

---

[5]    The Equine Act defined "equine activity" as:

(A)    an equine animal show, fair, competition, performance, or parade involves any breed of equine animal and any equine discipline…;

(B)    equine training or teaching activities;

(C)    boarding equine animals;

(D)    riding, inspecting, or evaluating an equine animal belonging to another, without regard to whether the owner receives monetary consideration or other thing of value for the use of the equine animal. . . ;

(E)    informal equine activity, including a ride, trip, or hunt that is sponsored by an equine activity sponsor;

(F)    placing or replacing horseshoes on an equine animal; or

Christi 2002, no pet.) (holding that plaintiff leading horse to paddock was participant in equine activity as defined in Equine Act, but that there was fact issue as to whether one of exceptions to exclusion from liability found in section 87.004 of Act applied)). The court held that Young had failed to raise a fact issue as to any of the exceptions to the Equine Act's waiver of liability for participants in equine activities set out in section 87.004, and it affirmed summary judgment in favor of the stable owners. *Id.* at 784.

The Waaks argue in this case that *Young* supports their contention that the FAAA waives their liability for the Zunigas' claims because the Fourteenth Court of Appeals disagreed with the statement in *Dodge* "that only consumers of equine activities qualify as participants in equine activities as defined in the Equine Act." *Id.* at 781. They urge us to conclude, on the basis of *Young*, that the FAAA precludes the Zunigas' claims for the same reason and that *Dodge* should be overruled. We reject this argument for two reasons.

---

(G)     without regard to whether the participants are compensated, rodeos and single event competitions, including team roping, calf roping, and single steer roping.

*Johnson v. Smith*, 88 S.W.3d 729, 732 (Tex. App.—Corpus Christi 2002, no pet.) (quoting section 87.001 of Equine Act, which has since been amended to create FAAA).

22

First, the FAAA expressly broadened the scope of activities covered by the Equine Act,[6] so those portions of the legislative history of the Equine Act that apply to conditions prevailing when that predecessor statute was enacted that are inconsistent with the language of the FAAA were overridden by the amendments to the Act and are moot. *See Lee*, 807 S.W.2d at 294 ("It is the obligation of the legislature, rather than the courts, to develop a workable definition of [a statutory term]"); *see also Willis*, 471 S.W.3d at 34 (holding that courts interpreting amended statutes must presume that legislature intended that repeal of statutory definition would result in courts applying different definition consistent with principles of statutory construction). But the Legislature did not otherwise amend the language or scope of the Act to abrogate the protections of the Workers' Compensation Act. In particular, the amendments did not add employees who perform farm animal activities for a ranch owner who employs them in return for compensation to the list of "participants" or "professionals" for whose injuries in the scope of their employment a "person," such as a "farm animal activity sponsor" or "livestock producer," is exempt from liability. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 87.001, 87.003. Thus, because the Legislature did not amend the statute to include an "employee" within the definition of a "participant" in a farm animal activity, the amendment of the Act subsequent to *Dodge* does not change our view that a farm or

---

[6]     See the meaning of "equine activity" as defined in the Equine Act, set out in note 4.

23

ranch employee is not a "participant" under the amended FAAA, just as the *Young* court likewise concluded. *See Young*, 373 S.W.3d at 782; *see also Jones*, 745 S.W.2d at 902 ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute. Only when it is necessary to give effect to the clear legislative intent can we insert additional words into a statutory provision.") (citations omitted).

Second, regardless of whether the Legislature "suggested" its intent to limit the definition of participants under the Equine Act to "consumers of equine activities," we did not rest our holding in *Dodge* on this legislative history and it is, therefore, dictum. We rested our holding on the plain language of the statute and the harmonization of the Equine Act with the Workers' Compensation Act. *See Dodge*, 187 S.W. 3d at 529–30 (distinguishing scope of Acts); *see also Castleman*, 546 S.W.3d at 688 ("While 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'") (quoting *Cadena Comercial USA Corp.*, 518 S.W.3d at 338); *Rodriguez*, 547 S.W.3d at 838–39 ("[W]e consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent, [and we] construe statutes so as to harmonize [them] with other relevant laws, if possible.").

24

The Waaks' argument that *Young* abrogated *Dodge* because the *Young* court rejected the argument in *Dodge* that the Equine Act was confined to tourism activities is incorrect. The Fourteenth Court of Appeals in *Young* followed the same reasoning as *Dodge* (with specific reference to *Dodge*) in concluding that an "employee" is not a participant under the Equine Act, now the FAAA, because such a reading of the Act would generate a conflict with the Workers' Compensation Act. *See Young*, 373 S.W.3d at 782. And it concluded that Young was a participant in an equine activity covered by Equine Act section 87.003 because she was an independent contractor, not an employee. *Id.* at 781 (citing *Johnson*, 88 S.W.3d at 732).

We have held that Zuniga was not a participant in a farm animal activity at the time of his death and that, therefore, the FAAA does not bar the Zunigas' claims. Accordingly, we turn to whether the Zunigas have raised a fact issue as to whether Zuniga was an employee of the Waaks under the terms of the Workers' Compensation Act, and, if so, whether the Zunigas have raised a fact issue as to every element of their claims against the Waaks, requiring reversal of the summary judgment against them.

## D. The Texas Workers' Compensation Act

The Texas Workers' Compensation Act (TWCA) provides for elective workers' compensation insurance coverage of employees by their employers. TEX.

LABOR CODE ANN. §§ 406.001–406.165 (West 2015 & Supp. 2017). The TWCA specifically applies to "an action to recover damages for personal injuries or death sustained by a farm or ranch employee" who is employed by a person with a gross annual payroll of at least $25,000 or "who employs three or more farm or ranch employees other than migrant or seasonal workers." *See id.* § 406.162(a)(3)(B)(i), (ii) (West 2015). TWCA section 406.165, however, expressly excludes independent contractors from workers compensation insurance coverage. *See id.* § 406.165 (West 2015).

It is undisputed that three ranch hands were working on the Waaks' ranch at the time of Zuniga's death. It is also undisputed that the Waaks did not provide workers' compensation insurance for these workers. Under the terms of section 406.162,(a)(3)(B)(k) and (ii), the TWCA did not apply to the Waaks if they had fewer than three employees.[7] The TWCA also did not apply if the workers were independent contractors. The Waaks concede that one of these three workers was an employee, but they argue that the other two workers, including Zuniga, were independent contractors.

---

[7]     The parties also discuss the minimum payroll. The statute they are disputing says the Workers' Compensation Act applies to ranch employees if any of the listed, disjunctive tests are true. TEX. LAB. CODE ANN. § 406.162(a) (West 2015). Because the number-of-employees test applies, we do not need to determine whether the minimum-payroll test also applies.

26

Under TWCA section 406.165, "[a] farm or ranch employee who performs work or provides a service for a farm or ranch employer . . . is an employee of that employer unless the employee is hired to perform the work or provide the service as an employee of an independent contractor." *Id.* For a person to be an independent contractor rather than an employee of an employer, there has to be another person who "acts as the employer of the employee by paying wages, directing activities, and performing other similar functions." *Id.* § 406.165(b)(1). There is no evidence that Zuniga or anyone else working on the ranch worked for, was directed by, or provided services for anyone other than the Waaks. As a result, no one working at the Waaks' ranch qualified as an independent contractor under the TWCA. *Cf. Young*, 373 S.W.3d at 782 (holding that Young was independent contractor where she controlled details of her work for stable owners feeding several horses and cleaning stables; stable owners employed at least two other persons to feed Jasper; Young operated independent business which she advertised; and Young was paid per feeding and stall cleaning).

We conclude that, under the TWCA's plain terms, Zuniga was an employee of the Waaks and entitled to coverage under the TWCA because the summary judgment evidence established that the Waaks employed at least three people to work on the ranch. None of these workers were seasonal or migrant workers subject to different requirements, and none qualified as independent contractors. Thus,

27

Zuniga was an employee of the Waaks for purposes of the TWCA as a matter of law. Moreover, the summary judgment evidence—including the depositions of the Waaks regarding the events on the day Zuniga was killed, the local sheriff's office report, and the medical examiner's report—raises fact questions as to whether Zuniga was killed while performing work within the scope of his employment; whether the Waaks owed him a duty of ordinary care as his employers, which they breached; and whether his injuries were proximately caused by the breach. Therefore, the Zunigas have satisfied their burden of proof in avoidance of summary judgment. *See* TEX. R. CIV. P. 166a(c); *Little*, 148 S.W.3d at 381.

Accordingly, we sustain each of the Zunigas' three issues.

## Conclusion

We reverse the trial court's grant of summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.


Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Justice Higley, concurring in part and dissenting in part.